## L. A. RAGSDALE *v.* E. E. RAGSDALE.

1. TRUST IN LAND.  *Will.  Preventing devise to another.*
    Where one has prepared a will naming his son as devisee of certain land, and afterwards, in his last illness, when purposing to give by codicil a half interest therein to another son, the devisee named, actively interferes, and, by assurances that he will convey to his brother the half interest, together with other conduct and representations, prevents the making of the codicil, he will, after the testator's death, be held a trustee of a half interest in the land for his brother.

2. SAME.  *Statute of frauds.  Trust by operation of law.*
    While an oral promise to hold land in trust for another person is void, thus to interfere and prevent a testator from making provision for another, whereby a bounty intended for such other is intercepted, is a fraud, from which a trust arises by operation of law not within the statute of frauds or wills.

FROM the chancery court of Lauderdale county.

HON. SYLVANUS EVANS, chancellor.

L. A. Ragsdale, Sr., lived in the city of Meridian, where he owned a large amount of property, real and personal.  On June 19, 1886, in due form of law, he executed a will by which he gave a large portion of his property, including lot 78 in Meridian, to his son L. A. Ragsdale, Jr., and made certain provisions for his daughters.  To his younger sons, Charles R. and Everett E. Ragsdale, he gave nothing, but merely expressed a wish that Mrs.

Ragsdale their mother would provide for them. In December, 1886, L. A. Ragsdale, Sr., was visiting his daughter in the city of Memphis, Tenn., where he was taken very ill, and expressed a wish to change his will so as to give to his youngest child, Everett E. Ragsdale, a half interest in lot 78, with the improvement thereon, which property was very valuable, and which produced a large yearly income. In order to make this desired change, he caused his attorney at Meridian, who had drawn the will, to be sent for, and the attorney went to Memphis and there prepared a codicil to make the desired change. Shortly after this paper was prepared, the said L. A. Ragsdale, Sr., requested his son, L. A. Ragsdale, Jr., who was with him and knew of his desire, to go after the attorney and bring him, with the codicil, in order that it might be executed in due form. The said L. A. Ragsdale, Jr., left the house where his father was lying ill and went, or pretended to go, for the attorney, and after an absence of some hours returned and reported to his father that he could not find him. Thereupon Ragsdale, Sr., expressed regret and disappointment at not being able to have his will changed so as to make the provision for his son Everett, when the said L. A. Ragsdale, Jr., interposed and urged his father not to trouble himself about the matter, and assured him that it was not necessary to make the change in writing in order to give a half interest in the property to his brother, and assured him that he would carry out his father's wishes in every respect, and would convey a half interest in the property to his brother. The father acquiesced in this assurance, and ceased to speak of the subject. Shortly thereafter, on the 10th day of December, 1886, he died leaving his will unchanged. Everett E. Ragsdale was then only thirteen years of age, and was not present and knew nothing of the effort or desire of his father to execute a codicil in his favor and the other circumstances above stated, and his elder brother, the said L. A. Ragsdale, Jr., communicated none of these facts to him, but immediately after the death of the testator produced the will and had it probated. He failed to carry out the promise made his father to convey to his brother. Some time after the death of the testator, it being ascertained that

his purpose to execute the codicil had been thwarted as above stated, this bill was filed on behalf of Everett E. Ragsdale, seeking to hold the said L. A. Ragsdale, Jr., a trustee for him as to a half interest in said property. The bill charges that the conduct of the defendant was grossly and flagrantly fraudulent, and that it prevented the execution of the codicil in his favor. To this bill a demurrer was interposed, setting up among other things, that the alleged trust in the land was void under the statute of frauds because not manifested in writing. From a decree overruling the demurrer, the defendant appealed.

*Walker & Hall,* for appellant.

No trust in land can be set up by a mere parol agreement, nor can a trust result from the breach of such a contract. Abundant and conclusive proof of this abounds in our own supreme court reports wherever the subject of trust in lands is discussed, and also in all the text books. The very object sought would be defeated were trusts in lands to be enforced upon such declarations· and promises as are set forth in the bill in this case, and title to land would be hampered or destroyed. *Gibson* v. *Foote,* 40 Miss. 788 ; *Miazza* v. *Yerger,* 53 Ib. 135; *Robinson* v. *Leflore,* 59 Ib. 148 ; *Moore* v. *Jordan,* 65 Ib. 229 ; *Clearman* v. *Cotton,* 66 Ib. 467. Apart from our decisions and text writers, the judges are clear, distinct and uniform in holding such trusts void wherever the seventh section of the English statute of frauds is in force. Section 1296 of the code of 1880 is almost an exact copy of that section. Some states have not incorporated this section in their statute of frauds. Mr. Malone discusses this fact, and says that it must be taken for granted that in all states where it is adopted an express trust in land can only be created by writing. Malone on Real Prop. Trials, p. 484 *et seq.*

2. It will doubtless be attempted to maintain this bill under the proviso to § 1296 of the code, which treats of a resulting or constructive trust arising by operation of law. If the bill is sufficient to sustain a trust in favor of complainant, it must depend upon

the relations of the parties, their acts and conduct; it cannot spring from what the deceased said or from any real promises.

The allegations of the bill are entirely insufficient to show fraud. We mean such fraud as will bring the defendant within the pale of the authorities. It does not show that he practised deceit in going for the attorney, or that he might have found him. It is not shown that defendant's acts prevented the deceased from executing the codicil. It is not charged, that at the time he did not intend to carry out his promises, nor are there any facts from which it might be inferred that defendant, by fraud or deceit, prevented the change in the will. Defendant cannot be held as trustee *ex maleficio,* unless the allegations are sufficient to show that his acts, promises and assurances were at the time *actually and intentionally false and fraudulent.* 2 Pom. Eq. Jur., p. 629, and authorities there cited. In order that the doctrine of trusts *ex maleficio* may be enforced, there must be more than a mere verbal promise, however unequivocal, otherwise the statute of frauds would be abrogated; there must be an element of positive fraud accompanying the promise, by means of which the acquisition of the legal title is wrongfully consummated. Ib. 1056.

Where is the allegation in this bill charging the defendant with positive and intentional fraud in respect to his alleged promises? A false representation upon which fraud may be predicated must be of an existing fact, and not of a promise for the future. Even an unconscientious refusal to perform an alleged promise to reconvey is not such a fraud as can displace the statute. 90 Am. Dec., p. 277, and authorities cited.

Where fraud is charged the bill must allege it clearly and distinctly. Perry on Trusts, 226 ; *Sawyer* v. *Puckett,* 19 Wall. 160.

We submit that the allegations in this case are wholly insufficient to establish a charge of fraud. Loose and general declarations by one member of a family of holding property in trust for others are not sufficient to establish a trust. *Steere* v. *Steere,* 5 Johns. Ch. Rep. p. 1 ; *Moore* v. *Jordan,* 65 Miss. 229.

*McIntosh, Williams & Russell,* on the same side.

The allegations of the bill show an attempt to establish by parol a trust in land, in violation of § 1296, code 1880. This is not an effort to establish a resulting but an express trust. The opinion of this court in *Miazza* v. *Yerger*, 53 Miss. 135, affirmed in *Robinson* v. *Leflore*, 57 Ib. 148, lays down a true test in this class of cases. "While a trust which a court of equity will enforce may spring out of the relations of the parties, no such trust can arise by a parol contract between the parties, and wherever a claim is based on a parol agreement it must be treated as void." Suppose we take from the allegations of the bill the parol promise of appellant to convey, what fact is there that would tend to establish a trust in the property? None whatever, unless this results from the fact that Ragsdale, Jr., went for the attorney and was unable to find him. It is not pretended that he was able to find the attorney and by fraud kept him from his father. Then, when his father expressed disappointment, he merely made a promise that his brother should have an half interest in the property. The promise was not binding. No court has laid down a rule which will make a trustee of the holder of property in the absence of fraud. There is no showing here that fraud was practised on the testator or any one else in order to prevent the execution of the codicil. Certainly it should be shown that the defendant did not intend carrying out his agreement at the time he made the promise. It may be that he made it in the best of faith, and afterwards merely declined to carry it out. To enforce a trust under such circumstances would be in effect to abrogate the statute. See *Moore* v. *Jordan*, 65 Miss. 229; *Clearman* v. *Cotton*, 66 Ib. 467.

*J. S. Hamm* and *Fewell & Brahan*, for appellee, filed a very elaborate brief, too long for condensation, in which they argued that from the facts and circumstances and the situation and relation of the parties, as stated in the bill, a trust arose by operation of law in favor of complainant; that the defendant, by actively interfering, and, by means of his promises and assurances, preventing the testator from giving by codicil to complainant an interest in the property, constituted himself a trustee of such interest in favor of

complainant; that such trust was not within the statute of frauds, and that it would be enforced by a court of equity.

In support of their views, counsel cited and reviewed at length the following authorities: 1 Story Eq. Jur. § 64; 2 Ib. §§ 781, 788, 980, 981, 1195, 1254, 1255; 1 Pom. Eq. § 155; 2 Ib. §§ 919, 921, 1030, 1040, 1044, 1445, 1053, 1054, 1055, 1056; 1 Perry on Trusts, §§ 166, 168, 181; 2 Reed on Stat. Frauds, § 860; 1 Redf. on Wills, 511, 512; 3 Ib. 580; 1 Daniel Ch. Pr. 657; *Barrel* v. *Havrick*, 42 Ala. 60; *Williams* v. *Fitch*, 18 N. Y. 546; *Foote* v. *Bryant*, 47 Ib. 544; *Ohara* v. *Dudley*, 95 .Ib. 403, s. c. 47 Am. R. 53; *Piper* v. *Hoard*, 1 Am. St. R. 791; *Williams* v. *Vreeland*, 32 N. J. Eq. 135; *Gilpatrick* v. *Glidden*, 81 Me., s. c. 10 Am. St. R. 245; *Curdy* v. *Burton*, 79 Cal. 420. s. c. 12 Am. St. R. 157; *Thompson* v. *White*, 1 Am. Dec. 252; *Towles* v. *Burton*, 24 Ib. 409; *Hodge* v. *Hodge*, 26 Ib. 52; *Jones* v. *McKee*, 45 Ib. 661 and notes; *Statham* v. *Ins. Co.*, 45 Miss. 592; *Robinson* v. *Leflore*, 59 Ib. 151; *Thomas* v. *Thomas*, 62 Ib. 532; *Klein* v. *McNamara*, 54 Ib. 100; *Moore* v. *Jordan*, 65 Ib. 235.

According to the principles laid down by writers of the highest authority, and according to a great number of adjudicated cases, the facts stated in the bill present a proper case for relief; and certainly every rule of morality requires that the party who tenders assurances and makes promises in circumstances such as surrounded the parties, father and son, as set out in this bill, ought to be held to make them good. The court is not to be confined to what was said and done by the defendant at the time he prevented his father from executing the codicil, but will take into consideration all his subsequent acts and conduct, in passing upon the question of fraud and imposition.

CAMPBELL, J., delivered the opinion of the court.

There is no dissent in the books from the proposition that one who is *active* in preventing a testator from making an intended provision by his will for another, and where, but for such intervention, the intended provision would have been made, will be held to be a trustee of any devise to himself, to the extent it would have

been for such other, if it had not been intercepted by him, and will be compelled to respond to the claim of the intended beneficiary. Intercepting a bounty intended for another, and diverting it to one's self, is held to be a fraud, from which a trust arises by operation of law, and not within the statute of frauds or wills, but expressly excepted.

The facts stated in the bill show that the testator, who had procured a codicil to be prepared to change the devise made wholly to the appellant, so as to include the appellee as a sharer of the devise, was induced by representations and assurances of the appellant to forego and abandon his purpose to execute the codicil to effect the purposed change in the will, which was left as written because of such representations and assurances. Out of this transaction a trust arises by operation of law, because the testator was influenced with respect to his will, and an intended beneficiary was prevented from receiving .the benefit which, but for the intervention stated, would have been secured to him by the act of the testator.

We would not be understood as sanctioning the doctrine that an enforceable trust will arise from the mere breach of an oral promise, however solemn, to hold land in trust. There must be conduct influential in producing the result, and but for which such result would not have occurred, amounting, in the view of a court of equity, to fraud, to save the case from the statute of frauds. A merely oral promise, and its subsequent breach, however disappointing and harmful, and though ever so reprehensible in morals, is not of itself enough to cause a court of chancery to declare a trust.

*Affirmed, and thirty days given for answer after mandate filed in the court below.*