JOHN R. MOORE ET AL. *v.* ROWLAND A. CRUMP, JR., ET AL.

1. TRUSTS. *Obtaining conveyance by fraud. Statute of frauds. Code* 1892, § 4230. *Parol evidence. Sufficiency of evidence.*

   A trust, not within the statute of frauds (Code 1892, § 4230), and which may be established by parol, will be raised in favor of a party to whom land was intended to be granted or devised, if another by actual fraud obtains the legal title thereto; but the trust can be established only upon clear and convincing proof of the fraud.

2. SAME. *Facts examined.*

   Facts examined and adjudged not to make out a case within the rule above stated.

3. SAME. *Witnesses. Estate of decedent. Code* 1892, § 1740.

   Witnesses are incompetent to testify to establish their own claims against the estate of a decedent, under Code 1892, § 1740, so providing.

4. SAME. *Statute of limitations. Adverse possession. Code* 1892, §§ 2730, 2731, 2734. *Equity. Reformation.*

   Where a grantor owned only the north half of a section of land and, intending to convey it, by error conveyed the west half and the grantee took actual possession of the land intended to be conveyed:

   (*a*) The grantor and those holding under him will be barred of all claim to the land intended to be but not actually conveyed after the expiration of ten years from the beginning of such possession; and

   (*b*) Equity would, on proper application, reform the deed so as to make it convey the land intended to be conveyed.

5. SAME.  *Chancery practice.  Cross-bill.  Prayer for general relief.  Reformation granted.*

   Where a cross-bill based on a mistake in a deed concluded with a prayer for general relief, the chancellor should have decreed that the cross-complainants were, as to the cross-defendants, the owners of the property in question, where the proof showed such to be the case, although the cross-bill did not seek the reformation of the deed.

FROM the chancery court of Lowndes county.

HON. JAMES F. McCOOL, Chancellor.

Crump and others, appellees, were complainants, and Moore and others, appellants, defendants in the court below.  From a decree in complainants' favor the defendants appealed to the supreme court.

The facts are fully stated in the opinion of the court.

*William Baldwin,* and *C. L. Lincoln,* for appellants.

The bill on its face makes out no case, and is directly in the teeth of the statute of frauds.

If there be any principle of law settled beyond all controversy, it is that a trust growing out of a parol agreement is absolutely void.

The averments of the bill in this cause are that R. A. Crump, being financially embarrassed, "agreed" with Mrs. Bryan that Smith should convey her the lands, and she was to hold them and divide them in equal parts between herself and his other children.  The bill does not state that Crump furnished any of the money to buy the lands, simply "an agreement" to buy and hold them in trust.  The cases of *Miazza* v. *Yerger,* 53 Miss., 139, and *Robinson* v. *Leflore,* 59 Miss., 150, are clear and distinctive expressions of the statute of frauds, as applied to agreements of the character named in this bill.

If the bill on its face sets out any case, all the facts constituting any semblance of equity in it are entirely removed by the testimony of appellees' own witness, C. R. Smith, whom they will not be permitted to impeach or deny.

The facts are few and simple—to wit: R. A. Crump's lands had been sold at trustee's sale and purchased by witness. Crump hoped to be able to buy these lands back, and he and witness had an understanding that if Crump would pay to witness what he (witness) had paid for the lands and ten per cent interest on the money, witness would sell the lands back to him (Crump). Thereafter Crump went to witness and told him to use the language of the witness: "Then some time afterwards, I do not remember how long exactly, Mr. Crump came to me and stated that he had not the money to buy the property back, but his daughter, Mrs. Bryan, did have the money, and asked me would I convey the property to her, as he did not think that he would ever be able to redeem it. I told him I would by her paying me ten per cent interest on the money I had invested in the property, which she did do, and I conveyed her the property."

The open, notorious, continuous, adverse possession of Mrs. Bryan from 1889 to the filing of this bill in 1902, a period of more than ten years, is a perfect defense.

If the transaction was a fraud on the creditors of Crump, and wanting in consideration paid for it, his (Crump's) heirs and representatives are bound by it, and it does not lie in their mouth to say that it was fraudulent. *Shaw* v. *Millsaps,* 50 Miss., 380; *Partee* v. *Mathews,* 53 Miss., 142; *Day* v. *Davis,* 64 Miss., 253; *Martin* v. *Tillman,* 70 Miss., 614. As to the error or misdescription in the lands owned by Willie. Bryan, and sought to be corrected in his cross-bill, the decree appealed from never disposes of it at all, ignores it and the cross-bill altogether.

*Newman Cayce,* for appellees.

The evidence amply and fully sustains the findings of the chancellor upon all the averments of the bill, that complainants and defendants are tenants in common, as to all the lands de-

scribed in the bill, and were of right entitled to the relief prayed.

This proceeding is not in purpose or effect attacking the validity of the deed made by C. R. Smith to Mrs. Mattie R. Bryan, conveying the land purchased by him from E. G. Smith, trustee, but only to show the conditions and circumstances under and by which Mrs. Bryan received and held the land during her lifetime, and these conditions and circumstances shown by the evidence establish beyond question that the deed was received by her under conditions and circumstances out of which arises an implied constructive trust by operation of law for the benefit of her brother and sister, the enforcement of which constructive trust the clearest principles of equity and justice demand. It is not an express· trust, but a constructive trust, arising out of the fact that Mrs. Bryan, by promising her father to hold the lands for the benefit of herself and her brother and sister, was enabled to obtain the deed thereto. Beyond all doubt but for this promise the deed would never have been made to her, founded as it must have been upon the confidence of the father in the daughter complying therewith. Where the promise is made between the father and child the moral obligation is strengthened by the existing relation and the confidence which the one would naturally repose in the other.

The statute of frauds, § 4230, Code 1892, to which defendants appeal in their effort to withhold from their co-heir their proportion of the common property of their ancestor, has no application, except that the section expressly provides that a trust like this "shall be of the like force and effect, as if this statute had not been passed." The statute of frauds is for the purpose of preventing frauds, not for the purpose of upholding and consummating them.

Constructive trusts are such as are raised by equity in respect to property which has been acquired by fraud, or where originally acquired without fraud. It is against equity that it

should be retained by him who holds the legal title. Where real estate is conveyed with an express or implied agreement that it shall be held for the use of a third person, equity will fasten a trust on the conscience of the trustee. If a grantee or devisee obtain a deed or devise to land by means of promises to hold the land for another, this is sufficient to raise a trust in favor of the latter on the ground of fraud, and this may be proved by parol. 2 Washburn on Real Property (3d ed.), 447, 451; 1 White & Tudor's Leading Cases in Equity (4th ed.), 432; *Ransdell* v. *Moore,* 153 Ind., 393 (s. c., 53 R. L. A., 753); *Ragsdale* v. *Ragsdale,* 68 Miss., 92.

HARRIS, Special Judge,* delivered the opinion of the court.

The facts of this case, briefly stated, are as follows: One R. A. Crump, Sr., in his lifetime, was the owner of certain real estate in Lowndes county, Miss., consisting of houses and lots in the town of Artesia, and certain country property. He had been engaged in the mercantile business, and became heavily embarrassed financially, and in 1887 executed a deed of trust on the property in controversy in this suit to secure J. L. Smith an indebtedness of about $2,700. Shortly before the death of R. A. Crump, Sr. (about two years), which occurred in November, 1889, finding himself hopelessly involved financially, the property in question was sold under the trust deed, and purchased by C. R. Smith, who was a friend of, and had business dealings with, R. A. Crump, Sr. R. A. Crump, Sr., represented to C. R. Smith his condition; told him he would be unable to redeem the property, but stated to Smith that his daughter and oldest child, Mrs. Mattie Bryan, had money, and would purchase the property, and Smith agreed to let Mrs. Bryan have the property, she to pay the amount, with 10 per cent interest. A conveyance was shortly afterwards made by C. R. Smith to Mrs. Bryan. As above stated, R. A. Crump,

---

*Chief Justice Whitfield, being disqualified, recused himself, and J. B. Harris, Esq., a member of the supreme court bar, was appointed in his place and presided as such.

Sr., died in 1889. Mrs. Bryan died in 1896, leaving surviving her Willie Bryan, a minor, Ruby Bryan (now Mrs. Noffsinger), and her second husband, J. R. Moore. Besides Mrs. Bryan, Mr. Crump, Sr., left surviving him two other children —Roland A. Crump, Jr., and Mrs. Annie M. Gladley. On the 31st day of March, 1902, six years after the death of Mrs. Bryan, and about thirteen years after the death of R. A. Crump, Sr., R. A. Crump, Jr., and Mrs. Annie Gladley filed a bill in the chancery court of Lowndes county, making J. R. Moore, Mrs. Noffsinger, Willie Bryan, Gaius Whitfield, and others parties defendant; alleging that the conveyance of the property in controversy by J. R. Smith to Mrs. Bryan was with the understanding that it was to be held by her for the benefit of herself and the other children of R. A. Crump, Sr.; that R. A. Crump, Sr., being insolvent, and wishing to save this property for his children, had entered into a scheme by which the title to the property was put in Smith, and then from Smith conveyed to Mrs. Bryan, to be held by her for the benefit of herself and the two complainants; and the bill prayed that the complainants be declared tenants in common of the property with the heirs of Mrs. Bryan, each entitled to a one-third undivided interest therein, and that the land be sold for division, and that an accounting be taken, etc. A separate answer was filed by J. R. Moore and Mrs. Ruby Noffsinger, denying all of the allegations of the bill in regard to the trust; alleging that the property was purchased in good faith by Mrs. Bryan; that she entered into possession, open and notorious, claiming the same as her property up until the time of her death, and that after her death the respondents, together with Willie Bryan, had been in possession of the same, receiving the rents and profits of the same, without question; that Mrs. Bryan during her lifetime had made valuable improvements on some of the property in Artesia, a storehouse on one of the lots having burned and having been rebuilt by Mrs. Bryan at considerable

expense; that during her lifetime Mrs. Bryan had used and disposed of the property as her own. A separate answer and crossbill was filed on behalf of Willie Bryan. He adopted the answer of J. R. Moore and Mrs. Noffsinger, but alleged that in the execution of the deed of trust by R. A. Crump, Sr., to J. L. M. Smith, by mistake he had conveyed the west half of section 18, township 18, range 16 east, whereas in fact he should have conveyed and intended to convey the north half of section 18, township 18, range 16 east; that R. A. Crump, Sr., did not own the west half of said section, but did own the north half, and that he intended to convey that; that the same mistake occurred in the deed made by C. R. Smith to Mrs. Bryan, but that Mrs. Bryan had taken possession of the north half of said section, making no claim whatever to the southwest quarter of said section. The cross-bill sets up further that there was a partition proceeding after the death of Mrs. Bryan, and that the cross-complainant had become the purchaser of the north half of section 18, or, in other words, of 240 acres in the north half; that it was the intention of R. A. Crump, Sr., to convey the north half; that all parties supposed he had conveyed the north half; that Mrs. Bryan had taken possession of the north half; and that the cross-complainant had also, after his purchase, taken possession of the north half, openly and notoriously, for more than ten years. He therefore prayed that the original complainants and his co-defendants be made parties defendant to his cross-bill, and their claim to an interest in the said north half—or, more exactly, the northeast quarter and the east half of the northwest quarter of section 18, range 16 east (a portion of this half section having been sold in the lifetime of R. A. Crump, Sr.)—be canceled as a cloud upon his title, and for general relief. The cross-bill was answered by the original complainants, but was not answered by the other defendants. Proof was taken, and a decree was rendered in accordance with the prayer of the original bill, and from that

decree the heirs of Mrs. Bryan and present possessors of the property appealed to this court.

It may be said, in passing, that the suit was dismissed as to Gaius Whitfield. There had been a partition proceeding, as above set forth, after the death of Mrs. Bryan—the property being sold—and Gaius Whitfield was the purchaser of a piece of the property at this sale.

We have given the case repeated and most painstaking investigation, and the result of our deliberation is that the decree of the chancellor must be reversed.

The evidence by which it was attempted to establish the trust, with the exception of one immaterial and unimportant particular, was by parol. The complainants (appellees here) invoke the well-established and well-recognized doctrine that, where a grantee or devisee obtains the possession and title to land intended for another by actual fraud, on proof of the fraud a trust will be raised in favor of the latter, and that the trust may be established by parol. The doctrine finds its most frequent illustration and application in the case of devisees preventing a testator from making intended provision by will for another, and like cases. The doctrine is clearly set forth in the familiar case of *Ragsdale* v. *Ragsdale,* 68 Miss., 92 (8 South., 315; 11 L. R. A., 316; 24 Am. St. Rep., 256). Judge Campbell, delivering the opinion of the court, says: "There is no dissent from the proposition that one who is active in preventing a testator from making an intended provision by his will for another, and where, but for such intervention, the intended provision would have been made, will be held to be trustee of any devise to himself, to the extent it would have been for such other if it had not been intercepted by him, and will be compelled to respond to the claim of the intended beneficiary. Intercepting a bounty intended for another, and diverting it to one's self, is held to be fraud, from which a trust arises by operation of law, and not within the statutes of frauds

of wills, but expressly excepted." The court continues: "We would not be understood as sanctioning the doctrine that an enforceable trust will arise from the mere breach of an oral promise, however solemn, to hold land in trust. There must be conduct influential in producing the result, and but for which such result would not have occurred—amounting, in view of a court of equity, to fraud—to save the case from the statute of frauds. A merely oral promise, and its subsequent breach, however disappointing and harmful, and though ever so reprehensible in morals, is not of itself enough to cause a court of chancery to declare a trust." Counsel for the appellees base their contention upon the doctrine set out in the Ragsdale case and kindred cases. We fully approve the doctrine. But the proof in the case at bar falls very far short of bringing the case within it. Under the authorities, not only must there be actual fraud on the part of the party sought to be held as trustee, but there must be clear and convincing proof of this fraud. There is absolutely no evidence in this record of any fraudulent conduct on the part of Mrs. Bryan whatever—no proof of any conduct on her part intended to mislead or to deceive any one, or to obstruct in any way the carrying out of any intention on the part of R. A. Crump, Sr., in favor of the appellees. This was not a deathbed transaction. The transfer of the property to Mrs. Bryan occurred two years before the death of Mr. Crump, and the evidence is that Mrs. Bryan was in possession of it, controlling it and using it as her own, and that Mr. Crump spoke of it as belonging to Mrs. Bryan.

But the case must fall under the proof which is made by the complainants' own witnesses. The first testimony offered was that of C. B. Smith, who was the only living witness to the transaction. He testified that he bought the property at the trustee's sale, in perfect good faith, as an investment, without any understanding whatever that he was to hold the title for the benefit of Mr. Crump or that it was to be held for the ben-

efit of the children of Mr. Crump. He testified that Mr.
Crump had asked to be allowed to redeem, and that he had
agreed to allow Mr. Crump to take the property for what he
(Smith) had paid for it, upon Crump paying him the purchase
price, with 10 per cent interest; that afterwards Crump came
to him and told him that he was unable to take the property,
and that he was so much embarrassed he saw he would not be
able to pay it, and asked if he would let Mrs. Bryan have it
upon the same terms that he (Smith) had agreed to let Crump
have it. Smith told him that he would do this, and afterwards
the deed was made to Mrs. Bryan, and the money was paid by
her, and he recognized her as being the owner, and nothing was
said about anybody else having an interest in the property. This
was the proof offered by the complainants themselves—the tes-
timony of the only living witness to the transaction.

In addition to this, the chancellor admitted—we think, er-
roneously—the testimony of the complainants. The admission
of this testimony was objected to upon the ground that it was
incompetent, as it was the testimony of parties to establish their
own claim against the estate of a deceased person, which arose
in the lifetime of the deceased. However, although this testi-
mony should have been excluded, it does not make out a case of
fraud. On the contrary, Roland A. Crump, Jr., testified that
Mrs. Bryan let her father have $1,400 for the purpose of pay-
ing this very debt. In addition to this, it is shown that Mrs.
Bryan did have the money, derived from several sources. Her
bank book was offered in evidence, showing she had $1,300 in
the bank, which she had drawn out at the time of this transac-
tion. Various witnesses were introduced, all of whom testified
that Mrs. Bryan was looked upon as the owner of this property.
She was in possession of it, managing and controlling it. Thom-
as Grant, who was a tenant on the country property, testified
that Mrs. Bryan owned the property; that he had been in the
habit of getting rations from Mrs. Crump, but a short time be-

fore Mr. Crump's death he came in to get his rations, and Mr. Crump told him that Mrs. Bryan owned the property; and he says he got rations from Mrs. Bryan. There is absolutely nothing in the record which tends to show fraud on the part of Mrs. Bryan. The chancellor did admit, as we have above stated, erroneously, the testimony of the complainants; and they testified that Mrs. Bryan had during her lifetime given them certain sums of money, which they understood to be part of their share of the rents from the property. This testimony, however, was wholly inadmissible, and, even if admissible, is very far from satisfying the court of any actual fraud on the part of Mrs. Bryan, or of any proof of any intention on the part of Mr. Crump to put the title of the property in her name for the benefit of the complainants. The idea of the complainants seems to be that the transaction was simulated, and that no money was passed; whereas, as a matter of fact, it is shown that Mrs. Bryan's money was actually used for the purchase of the property, and the title taken in her name. Again, it is shown by the testimony of Mr. Gladley, the husband of one of the complainants, that he actually collected rents from this property and turned it over to Mr. Lincoln, the guardian of Willie Bryan, and neither he nor his wife ever made any claim for any of these rents in any way. Mrs. Bryan entered into the possession of the property twelve or fourteen years before the bill was filed. Some of the improvements were burned, and rebuilt by her at a considerable expense; she paid the taxes; and her title seems never to have been questioned by anybody until this bill was filed, six years after her death. There is some vague testimony as to the statements and hints thrown out by Mr. Smith, all of which he denies, but, even if undenied, they would not be sufficient to establish the claim of the complainants. But this testimony by the complainants, on their own behalf, to establish their claim against the estate of Mrs. Bryan, deceased, as before said, was wholly inadmissible.

In regard to the claim set up in behalf of Willie Bryan, in his cross-bill, to the northeast quarter and the east half of the northwest quarter of section 18, township 18, range 16 east, we are of the opinion that, on the facts disclosed by the record, he is entitled to relief. The record shows that R. A. Crump, Sr., purchased the north half of said section from one Connelly, and went into the possession of it; that, when he executed the trust deed to Smith, he undertook to convey the 320 acres, but, by mistake, instead of writing in the deed of trust the "north half," the "west half" was written; and that the trustees, in conveying to C. R. Smith, the purchaser under the trust deed, conveyed to him the west half; and that C. R. Smith conveyed the west half to Mrs. Bryan. Mrs. Bryan, however, took possession of the north half. It is shown that Mr. R. A. Crump, Sr., owned no other lands in section 18, except the north half, and that Mrs. Bryan, under her sale, took possession of the north half; and the record also shows that, when the partition proceedings were had between the heirs of Mrs. Bryan, Willie Bryan actually bought, and took a deed from the commissioner to, the north half, less 80 acres which had been sold previously to Walter Fox. So the cross-complainant and those under whom he claimed had been in actual possession, claiming this north half, for more than ten years before the original bill in this case was filed.

We are of the opinion that, under the facts disclosed by the transcript, the defendants to the cross-bill are barred as to any claim that they might have had to any interest in the north half of said section. Had they asserted their claim at any time within the statutory period, under the facts disclosed in this record, we think, manifestly, a court of equity would have reformed the instruments purporting to convey the west half, and carried out the intention of the parties, but no such claim was asserted. Although the cross-bill is not a bill seeking the reformation of the deeds, it does conclude with a prayer for

general relief; and, under that prayer for general relief, the court below should have decreed that the claim of the defendants to the cross-bill was barred, and that Willie Bryan, cross-complainant, was, as to them, the owner of the property.

Our conclusion is that the decree of the chancellor be reversed, and a decree entered here dismissing the original bill, and, further, declaring the claim of Roland A. Crump, Jr., Mrs. Annie M. Gladley, J. R. Moore, and Mrs. Ruby Noffsinger, defendants to the cross-bill, forever barred as to the northeast quarter and the east half of the northwest quarter of section 18, township 18, range 16 east.

*Reversed, and decree here.*