## Leah Benbrook et al. v. Mariah Yancy.

### [51 South. 461.]

**Wills.** *Trusts. Constructive trust. Devisee for a purpose.*

> Where one of several persons to whom a testator designed to leave his property was influential in inducing him to devise his entire estate to her, promising to convey a share to each of the others, she will be adjudged to hold the property in trust and required to effectuate the disposition intended by the testator.

From the chancery court of Lee county.

Hon. John Q. Robins, Chancellor.

Benbrook and others, appellants, were complainants in the court below; Mrs. Yancy, appellee, was defendant there. From a decree in defendant's favor, complainants appealed to the supreme court. The facts are stated in the opinion of the court.

*O. K. Gary, Mitchell & Clayton* and *Flowers, Fletcher & Whitfield,* for appellants.

Mrs. Mariah Yancy did not take this property in her own right, but as trustee for all the heirs of William Triplett. *Gilpatrick v. Glidden* (Me.), 10 Am. St. Rep. 245.

Three propositions are incontrovertibly established by the proof in this case:

1. John Triplett was under obligation to his brother's family, recognized that obligation and desired to discharge it by his will.

2. That by the will Triplett did not intend to do more than to make Mrs. Yancy a trustee, and he desired and expected her to carry out his wishes in this respect and divide the property among all the heirs of William Triplett.

3. That Mrs. Yancy thoroughly understood this desire and promised Triplett at the time the will was made and thereafter to carry out his wishes.

*Resulting trusts and constructive trusts.* It is a test of a constructive trust that it arises in spite of the wish of the trustee, and by reason of fraud or wrongdoing. The trust is created because of the refusal of the one who is charged with an obligation to do his duty.

"*A devise or bequest procured by fraud.* Whenever a person procures a devise or bequest to be made directly to himself, —and thereby preventing perhaps an intended testamentary gift to another—through false and fraudulent representations, assurances, or promises that he will carry out the original and true purpose of the testator, and will apply the devise or bequest to the benefit of the third person who is the real object, and who would otherwise have been the actual recipient of the testator's bounty, and after the testator's death refuses to comply with his former assurances or promises, but claims to hold the property in his own right and for his own exclusive benefit, in such cases equity will enforce the obligation by impressing a trust upon the property in favor of the one who has been defrauded of the testator's intended gift, and by treating the actual devisee or legatee as a trustee holding the mere legal title and by compelling him to carry the trust into effect through a conveyance to the one who is beneficially interested. It is not necessary that the representations, assurances, or promises of the actual devisee or legatee should be in writing, they may be

entirely verbal. There are a few cases which seem to hold that a trust will arise under these circumstances from a mere verbal promise of the person. This position, however, is clearly opposed to settled principle. The only ground upon which a trust can be rested by the overwhelming weight of authority, is actual intentional fraud." 3 Pomeroy's Equity Jurisprudence (3rd ed.) § 1054. .

· It will doubtless be argued that our contention is defeated by · the closing sentence of this section dealing with promises made for the first time after the will had been executed and hence no fraud could have resulted. See note to this text 3 Pomeroy,. p. 2036.

*O'Hara v. Dudley,* 47 Am. Rep. 53, is strikingly in point. In that case there was a will absolute on its face giving all the testatrix's property to her priest, lawyer and physician. There was no want of testamentary capacity. There was evidence of undue influence, but the decision was not pitched on that ground. The will made no mention of anybody's interest except the named devisees, the priest, lawyer and physician. But there was a letter just as in the case at bar, addressed to the residuary legatees, stating that the property was really intended for certain charitable purposes. The law prohibited devises to these charities and the testatrix therefore took this method to accomplish her purpose. So here the testator sought. by the method adopted to avoid the expense of proceedings in the court. It seems that the named legatees promised to carry out the real wishes of the testatrix, just as in the case at bar.. Upon this promise, trusting to their honor, the testatrix relied. So applicable are the facts and conclusions of the court in that case to the facts in the case at bar that we invite special attention to it.

The court held the devisees as trustees, and went to the extreme of giving the property to the next of kin since the real beneficiaries could not take under the statutes of New York. Our case is stronger, since there is decidedly more evidence of

fraud, and besides there is no legal impediment to the estate's going to the ones whom Triplett desired to favor. Let it be noted that in the case cited real estate as well as personal property was involved, and the statute of frauds was no obstacle to the creation of the trust. This happened to be a case where there was a letter which declared the trust, just as in the case at bar, but no writing is necessary even to escape the statute of frauds or the statute of wills. *Curdy v. Berton* (Colo.), 12 Am. St. Rep. 157, is an instructive case, one of verbal instructions. *Williams v. Vreeland,* 29 N. J. Eq. 417; *Cross v. Bean,* 21 Atl. 752; *Van Tratha v. Vomberger,* 24 Pac. 883; *Ahrens v. Jones,* 88 Am. St. Rep. 620; *Grant v. Brodstrict,* 33 Atl. 165; *Ransdel v. Moore,* 53 L. R. A. 753; *Lawrence v. Oglesby,* 52 N. E. 945; *Amherst College v. Ritch,* 37 L. R. A. 321; *Hoge v. Hoge,* 26 Am. Dec. 52.

The question was considered in *Crossman v. Keister,* 8 L. R. A. (N. S.) 698, note. We call the court's attention to the exhaustive note on this case. In this case all the authorities are reviewed.

An examination of the case and the note to it shows the only ground upon which appellee can hope to prevail. This ground is bottomed, doubtless, upon a solitary expression in the case of *Ragsdale v. Ragsdale,* 68 Miss. 92, 8 South. 315. That case gives us comfort when it says: "There is no dissent from the proposition that one who is active in preventing a testator from making an intended provision by his will for another, and, where, but for such intervention, the intended provision would have been made, will be held to be trustee of any devise to himself, to the extent it would have been for such other if it had not been intercepted by him, and will be compelled to respond to the claim of the intended beneficiary. Intercepting a bounty intended for another, and diverting it to one's self is held to be fraud, not within the statutes of frauds or wills, but expressly excepted."

This language was all that was necessary to decide the case

since it was in relation to an occurrence in which a son had actually and actively prevented a father from making a codicil in favor of a brother. We think too that the facts, declarations and circumstances proven in the case at bar brings our case within this principle. But the chancellor was doubtless misled by this further statement in the opinion:

"We would not be understood as sanctioning the doctrine that an enforcible trust will arise from the mere breach of an oral promise, however solemn, to hold land in trust. There must be conduct influential in producing the result, and but for which such result would not have accrued—amounting, in view of a court of equity, to fraud save the case from the statute of frauds. A merely oral promise and its subsequent breach, however disappointing and harmful, and though even so reprehensible in morals, is not of itself enough to cause a court of chancery to declare a trust."

This language as the court will see at a glance is outside of the facts involved and is therefore dictum. If by the word "promise," the court means a promise made subsequent to the execution of the will, the view may be sound though this is doubtful, but if the court means a "promise" made contemporaneous with the execution of the will, we submit most defferentially that the court fell into error.

*Anderson & Long* and *Guy Mitchell*, for appellee.

Appellants contend that Mrs. Yancy was guilty of such fraud as would cause the court to create a trust in their favor. The trouble is with the proof. This division of the case falls completely when the record is searched to find anything tending to prove that Mrs. Yancy tried to induce testator to make his will as he did, or that she made him any promise whatever about the disposition of his property. All the testimony that could be construed as even tending to show promises on the part of Mrs. Yancy is that of Leah Benbrook and William

Triplett, both of whom were testifying to establish their claims against the estate of a deceased person, and the chancellor should not have admitted their testimony. But if we should concede, for the purpose of argument, that they proved a promise on the part of Mrs. Yancy, still this would be far from creating a trust, under the decisions of our court. In *Ragsdale v. Ragsdale*, 68 Miss. 98, 8 South. 315, Judge CAMPBELL says:

"We would not be understood as sanctioning the doctrine that. an enforceable trust will arise from the mere breach of an oral promise however solemn to hold land in trust.

"There must be conduct influential in producing the result, and but for which the result would not have occurred amounting, in the view of a court of equity, to fraud to save the case from the statute of frauds. A merely oral promise, and its subsequent breach, however, disappointing and harmful, and though ever so reprehensible in morals, is not of itself enough to cause a court of chancery to declare a trust."

In this case the testator was persuaded to dispose of his property as he did, when he was attempting to dispose of it otherwise, and the court said that the party perpetrated a fraud in thus having the property devised to him.

In *Moore v. Crump*, 84 Miss. 620, 37 South. 109, the court after having quoted the language in the *Ragsdale case,* says:

"Under the authorities, not only must there be actual fraud on the part of the party sought to be held as trustee, but there must be clear and convincing proof of this fraud."

There is no proof in this record, that Mrs. Yancy was guilty of fraud, and it certainly could not be said to be clear and convincing proof of fraud. There is no proof in the record of any conduct of Mrs. Yancy, intended to mislead or deceive testator, or obstruct in any way the carrying out of any intention on the part of testator, in favor of contestants.

The case of *Orth v. Orth,* 32 L. R. A. 299, is one in which

the doctrine upon which constructive trusts are created is fully set out and explained. We call the court's attention especially to the language of the court in this case on page 306 and the authorities there cited. In this case a distinction is drawn between cases resting upon actual fraud, and those resting upon mere promises. And it is held that mere promises are insufficient to create a constructive trust, and among the authorities cited by the court to uphold this position, is the case from our court of *Ragsdale v. Ragsdale.*

Argued orally by *R. V. Fletcher* for appellant, and by *W. D. Anderson* and *Guy Mitchell* for appellee.

SMITH, J., delivered the opinion of the court.

John Triplett died in December, 1906. Several years prior to his death he determined to leave his property at his death to the children of his deceased brother, William Triplett. As one of these children, a daughter, was of unsound mind, he decided to give her portion of the estate to her two children, Leah and Hugh Benbrook, complainants in the court below and appellants here. Instead of making his will in accordance with this determination on his part, contrary to the advice of the attorney who wrote the will, he bequeathed all of his property to his niece, Mariah Yancy, appellee, and one of the children of the said William Triplett, stating that she understood what he wanted done in the matter and would carry out his wishes. It is clear from the evidence that Mrs. Yancy understood what her uncle's intentions were, that she agreed to divide the property after his death in accordance therewith, and that, had John Triplett not so understood the matter, the will in question would not have been made. The bill filed in the court below, among other things, prayed that appellee be held to be a trustee, holding the legal title to said property for the benefit of the children of William Triplett and for appellants, and for

a sale thereof for a division. From a decree dismissing said bill this appeal is taken.

It is argued on behalf of appellee that she was not active in preventing the testator from making provision in his will for others, that there was no intention at all on her part, that at most she is only guilty of the breach of an oral promise to hold the property in trust, and that from a breach of such promise no enforceable trust will arise, citing in support thereof *Ragsdale v. Ragsdale,* 68 Miss. 92, 8 South. 315, 11 L. R. A. 316, 24 Am. St. Rep. 256. But the evidence shows much more than the mere breach of an oral promise on the part of appellee. As hereinbefore set out, the conduct of appellee was "influential in producing the result;" that is the making of the will, "but for which such result would not have occurred." It is true that in *Ragsdale v. Ragsdale, supra,* appellant, was active in preventing a testator from making an intended provision for another, promising to make such provision himself. But the court there held that "intercepting a bounty intended for another, and diverting it to one's self, is held to be a fraud, from which a trust arises by operation of law, and not within the statute of frauds or wills, but expressly excepted."

In order to come within this rule, it is not necessary for a party to actively intervene. In the language of the court in *Gilpatrick v. Glidden,* 81 Me. 151, 16 Atl. 466, 2 L. R. A. at page 664, 10 Am. St. Rep. 245: "If either before or after the making of the will the testator makes known to the devisee his desire that the property shall be disposed of in a certain legal manner other than that mentioned in the will, and that he relies upon the devisee to carry it into effect, and the latter, by any words or act calculated to, and which he knows do in fact, cause the testator to believe that the devisee fully assents thereto, and in consequence thereof the devise is made, but after the decease of the testator the devisee refuses to perform his agreement, equity will decree a trust, and convert the devisee

a fraud or not; the final refusal having the effect of consummating the fraud."

into a trustee, whether, when he gave his assent, he intended

The act of appellee comes clearly within this rule, and a trust therefore arises by operation of law. The only doubt as to whom the testator intended as objects of his bounty is whether all of the children of William Triplett, appellants representing their mother, should share therein, or whether all except Charles Triplett should share therein. This question can be solved on the evidence as it now stands; but as other evidence may be introduced on another trial, we express no opinion relative thereto.

The objection made to the admission of certain evidence introduced on behalf of appellants in the court below is not before the court on this record, and we have therefore given same no consideration.

The chancellor was correct with reference to the other matters complained of; but he erred in dismissing the bill, and not granting the relief prayed for as hereinbefore set forth.

*Reversed and remanded.*