COLEMAN, et al. *v.* KIERBOW.

Division B.   Nov. 12, 1951.

No. 38077  (54 So.  (2d)  915)

Creekmore & Creekmore, for appellants.

544

Howie, Howie, & Montgomery, for appellee.

## Roberds, P. J.

On November 25, 1947, Mrs. Sallie Lillian Herren made a will by which she devised to her five children, Roy LaFayette Coleman, James Floyd Coleman, Clarence Monroe Coleman, Bessie Jewell Covington and Ibye Lillian Kierbow, in equal parts the real property described as 502 South President Street in the City of Jackson, Hinds County, Mississippi.

On March 27, 1948, she executed a deed conveying this property to Mrs. Kierbow alone.

On October 12, 1949, Mrs. Herren departed this life, leaving as her only heirs at law said five children.

On March 2, 1950, the four first named children filed the bill herein against Mrs. Kierbow seeking (1) to set

aside said deed on the ground it was procured through fraud and undue influence on the part of the grantee therein, or, if not, (2) to hold Mrs. Kierbow as trustee of the title to the property for the four-fifths interest of the complainants. The will had not been probated when this cause was heard, nor was it produced or accounted for at such hearing. The chancellor dismissed the bill, thereby adjudicating against complainants both contentions as to the effect of the deed. Complainants appeal.

The lawsuit divides itself into two parts, one is that the deed is null and void; the other is that the deed is valid but the grantee holds title to the property as a constructive trustee.

We now deal with the contention that the deed is void. Two questions arise as to that, first, it is contended that the holding of the chancellor is against the great weight of the evidence and we should reverse him on the facts; and, second, that the refusal of the chancellor to permit three of the complainants to testify to the alleged acts of fraud and undue influence is reversible error.

Should we reverse the chancellor on his findings of fact? We will not try to detail all of the testimony. We shall set out only sufficient thereof to justify our conclusion. Most of the testimony is directed to the physical and mental condition of Mrs. Herren. That is incidental to the issue. It is relevant only as showing that her condition was such as that she might be susceptible to fraud and undue influence. It is nowhere charged, and no witness testified, that her mental condition, at the time she executed the deed, was such that she could not legally do that. It is shown that in October 1947, while she was operating a boarding house upon the property in question, she had a stroke and was carried to the Baptist Hospital in Jackson, where she remained some seven or eight days. From there she went to the home of Mrs. Covington, one of the complainants, located in Jackson. She remained there until January 11, 1948, some two months. It is in evidence that, at some inter-

vals during that period, she had hallucinations. Most of the time she was perfectly rational. But on November 25, 1947, she executed the will referred to herein, and complainants do not assert she was incapable of making that will. Indeed, they claim through it if it is produced and probated. Also, on January 8, 1948, she executed a trust deed on the property in controversy to secure a note for $2,500 to a local bank, which loan had been negotiated by Mr. Floyd Coleman, and Mr. J. L. Covington, husband of one of complainants. Complainants do not contend Mrs. Herren was mentally incapable of executing these papers. A bank officer testified he was present when the trust deed and note were executed to the bank and she appeared to him to be perfectly normal, and that she thoroughly understood the nature and effect of that transaction. Indeed, she requested the opportunity to read the note and trust deed, which she did very carefully, before she signed them. Both of these important business transactions occurred while she was at the residence of Mrs. Covington. Mrs. Herren moved to the home of Mrs. Kierbow in Jackson on January 11, 1948. It is in evidence that she gradually improved in health. She was seventy-seven years of age and her memory was not as good as in her younger days. As stated, the testimony as to her health and mental vigor was incidental to the issue to be decided. There is little, if any, proof of fraud on the part of Mrs. Kierbow. The bill states, as one ground of fraud and undue influence, that appellee, knowing her mother wished to move back to her old home, told her mother she and her husband would move there and take care of her if she would deed the property to appellee; that Mrs. Herren did not want to make the deed but was induced to do so by that promise. The proof is vague as to whether that promise was made, but, even so, it is shown that it was Mrs. Herren's supreme desire to go home again, and it is undisputed that Mrs. Kierbow and her husband did leave their own home and move to the conveyed property,

and there cared for Mrs. Herren until her death. It is difficult to predicate fraud upon that. Again, the bill states, but it is only an inference from the proof, that Mrs. Kierbow told her mother it was necessary for the deed to be made in order that the grantee might look after the property. The other specific act of fraud, alleged in the bill as ground for nullifying the deed, is the statement that Mrs. Kierbow told her mother that by deeding the property to her the estate would be relieved of paying inheritance tax thereon after the passing of Mrs. Herron. We have not detected in the record any proof that such a statement was made, but, if so, we are not prepared to say the statement might not be correct. Indeed, the case is argued here by appellants, not so much on specific representations or misrepresentations, inducing the execution of the deed, as upon the assumption of lack of consideration for the deed and that a confidential relation existed between Mrs. Herren and Mrs. Kierbow. It is urged that the law presumes the deed to be void for those two reasons and the burden is upon Mrs. Kierbow to rebut them and that the testimony does not do that. As to the consideration, Mr. Covington, husband of one of the complainants, gave it as his opinion that the property was worth from twenty-five to thirty thousand dollars. That was the only proof as to its value. Mrs. Herren paid $5,500 for it in 1923. The proof does not show the exact amount of the indebtedness against the property when the deed was made, but apparently it was slightly less than $2,500. That debt was assumed by the grantee. While the deed does not so recite, all of the proof proceeds upon the theory that Mrs. Kierbow and her husband agreed to leave their own home and move to the deeded property and thereafter care for and furnish a home to Mrs. Herren until her death, the time of which event being, of course, uncertain. And it is not disputed that they did do just that. As to the confidential relation, we may assume, for purpose of discussion, that such did exist

when the deed was executed, nevertheless we think the proof of appellee fully justified the chancellor in concluding that she had met any burden the law cast upon her in defense of the claim that the deed should be set aside.

We will refer to the testimony of only two of the witnesses in behalf of the defendant. They are Mr. Bert Crisler, admittedly a competent attorney and a man of uprightness and integrity, and Mrs. Della McNeil Harrison, secretary to Mr. Crisler and the notary public who took the acknowledgment to the deed. At the time of the trial she was residing in McComb, Mississippi, and was not in the employ of Mr. Crisler. Mr. Crisler testified that he had known the Kierbows some ten years and had done some legal work for them; that he had known Mrs. Herren three or four years. Mr. Kierbow called him over the telephone and asked him to draw a deed from Mrs. Herren to Mrs. Kierbow and bring it to the Kierbow home. He got the description from the trust deed to the bank, and dictated the deed to his secretary, who transcribed it on a typewriter. He and his secretary, who, as stated, was also a notary, went to the Kierbow home right after noon on Saturday. Mrs. Kierbow met them at the door, invited them into the room occupied by Mrs. Herren and Mrs. Kierbow disappeared and he saw her no more. Apparently, he did not see Mr. Kierbow. Mrs. Herren was sitting up in bed dressed. She knew him. In the words of Mr. Crisler, this is what happened: "When we walked into the room where Mrs. Herren was, Mrs. Kierbow left, and Mrs. Kierbow wasn't there. I explained in detail to Mrs. Herren exactly what I had and explained exactly the purpose of the deed and explained also to her the effect of the deed. I went into detail and explained that to her, that if she executed and signed that deed she had no further interest in the property and it was an absolute conveyance to Mrs. Kierbow and from that time on the

property would be absolutely Mrs. Kierbow's". He read the deed to her and she read it herself. They discussed the conveyance fully. She then signed it. Asked about her mental condition, Mr. Crisler said "She was perfectly rational. There wasn't anything wrong with Mrs. Herren mentally." He said he had heard she had not been well and for that reason he took particular note of her physical condition and mental activity. After she signed the deed he remained some twenty to thirty minutes in general conversation with Mrs. Herren. He recalled that she remarked, during the conversation, that he resembled his mother very much. On cross-examination, he said he explained to Mrs. Herren that she need not sign the deed. Mrs. Herren replied that Mrs. Kierbow had taken care of her, had spent a lot of money on her and she felt like Mrs. Kierbow was entitled to the property. Mr. Kierbow paid him for his services.

Mrs. Harrison's testimony was, in substance, the same as that of Mr. Crisler's, except that she had the impression that it was Mrs. Herren, and not Mr. Kierbow, who requested Mr. Crisler to prepare the deed and bring it to the Kierbow home for execution. She took Mrs. Herren's acknowledgment. There is no contradiction whatever of the testimony of these two witnesses.

This is sufficient, we think, without detailing other testimony for appellee, to show we would not be justified in reversing the chancellor in his refusal to hold the deed null and void for fraud and undue influence.

As to the competency of the three complainants to testify to set aside the deed, the sole object of that angle of the bill was to divest the title out of Mrs. Kierbow and reinvest it in the estate of Mrs. Herren, from which source the witnesses would be entitled to it. All the acts and circumstances and issues arose during the lifetime of Mrs. Herren, including, of course, her act in executing the deed, and whatever rights said witnesses may have, if they succeed in setting aside the

deed, come through Mrs. Herren. The sole purpose and effect of their testimony was to establish their claim against her estate. The chancellor correctly refused to permit them to testify on that issue. Section 1690, Miss. Code 1942; Jackson v. Smith, 68 Miss. 53, 8 So. 258; Neblett v. Neblett, 70 Miss. 572, 12 So. 598; McCaughan v. Hardy, 78 Miss. 598, 29 So. 397; Burnett v. Smith, 93 Miss. 566, 47 So. 117; Whitehead v. Kirk, 104 Miss. 776, 61 So. 737, 62 So. 432, 51 L. R. A., N. S., 187; Reedy v. Alexander, 202 Miss. 80, 30 So. (2d) 599; Allison v. Allison, 203 Miss. 15, 33 So. (2d) 289; Chatmam v. Carter, 209 Miss. 16, 45 So. (2d) 841; Duling v. Duling's Estate, Miss. 52 So. (2d) 39.

This brings us to the trust feature of the lawsuit. These same three claimants offered to testify, as we understand from the record, to the allegations of the bill undertaking to set up a constructive trust for the benefit of complainants. The learned chancellor held them incompetent under said Section 1690, Miss. Code 1942. Appellants say this was error.

This necessitates that we first determine whether the allegations of the bill state a case of constructive trust; otherwise, proof of such allegations would be useless.

We have already noted that the bill alleges Mrs. Herren was in ill health, weak of mind, was residing with appellee, and that a confidential relation existed between them. It then contains this specific charge bearing upon the trust feature of the case; "* * * and finally the defendant told and convinced her mother that if she would deed this property to her that she would not hold it as her own absolutely but would hold it in trust for all the children of her mother, and that upon Mrs. Herren's death that the property would be divided between all the children in equal shares just as her mother had provided in her will. * * * That relying on the false representations and the agreement of the defendant to hold the property in trust as aforesaid the said Mrs.

Herren was finally persuaded to execute the said deed";
that Mrs. Kierbow had refused to carry out her oral
promise and agreement to deed to complainants their
share of the property. Do these allegations, together
with any other pertinent allegations of the bill bearing
upon the question, as heretofore revealed in this opinion,
state a case of constructive trust?

In Restatement of the Law of Trusts, dealing with the
effect of the failure of an oral trust for a third person,
it is said:

██ "(1) Where the owner of an interest in land
transfers it inter vivos to another in trust for a third
person, but no memorandum properly evidencing the
intention to create a trust is signed, and the transferee
refuses to perform the trust, the transferee holds the
interest upon a constructive trust for the third person,
if, but only if,

"(a) the transferee by fraud, duress or undue in-
fluence prevented the transferor from creating an en-
forceable interest in the third person, or

"(b) the transferee at the time of the transfer was in
a confidential relation to the transferor, or

"(c) the transfer was made by the transferor in con-
templation of death".

In 54 Am. Jur., page 178, Section 233, it is said:
██ "A constructive trust arises where a conveyance
is induced on the agreement of a fiduciary or confidant
to hold in trust for a reconveyance or other purpose,
where the fiduciary or confidential relationship is one
upon which the grantor justifiably can and does rely and
where the agreement is breached, since the breach of
the agreement is an abuse of the confidence, and it is
not necessary to establish such a trust to show fraud or
intent to perform the agreement when it was made."

Again, in 54 Am. Jur. 179, Section 234, it is said:
██ "Active conduct on the part of the grantee to
bring about the conveyance, especially where there is a

fiduciary or confidential relationship between him and the grantor, and the grantee's subsequent failure to carry out his agreement or promise to hold in trust for reconveyance, tend to show fraud or bad faith on the part of the grantee, so as to raise a constructive trust.''

The quoted pronouncements have been referred to with approval by this Court in previous cases. Sample v. Romine, 193 Miss. 706, 8 So. (2d) 257, 9 So. (2d) 643, 10 So. (2d) 346; Adcock v. Merchants & Mfr's Bank of Ellisville, 207 Miss. 448, 42 So. (2d) 427; Pitchford v. Howard, 208 Miss. 567, 45 So. (2d) 142; Chichester v. Chichester, 209 Miss. 628, 48 So. (2d) 123.

See also, as dealing with these fundamental propositions, as related to the allegations of the bill setting up a trust relation, Ragsdale v. Ragsdale, 68 Miss. 92, 8 So. 315, 11 L. R. A. 316; Benbrook v. Yancy, 96 Miss. 536, 51 So. 461.

██ In our opinion, accepting as true all the allegations of the bill bearing upon constructive trust, which we must do in passing on the question at issue, the bill states a trust relation. ██ Such a trust is expressly excluded from Section 269, Miss. Code 1942, requiring express trusts to be in writing and recorded. Constructive trusts may be proved by oral testimony. Bush v. Bush, 134 Miss. 523, 99 So. 151; Adcock v. Merchants & Mfr's Bank; Pitchford v. Howard, and Chichester v. Chichester, supra; Triplett v. Bridgforth, 205 Miss. 328, 38 So. (2d) 756, and many other Mississippi cases which might be cited.

We realize and appreciate the danger in admitting oral proof to establish such a trust. For that reason, and as bearing upon the essentials of such a trust, we call attention to this statement of Judge Campbell in the Ragsdale case [68 Miss. 92, 8 So. 316]: ''We would not be understood as sanctioning the doctrine that an enforceable trust will arise from the mere breach of an oral promise, however solemn, to hold land in trust. There must be conduct influential in producing the result;

and but for which such result would not have occurred, amounting, in the view of a court of equity, to fraud, to save the case from the statute of frauds. A merely oral promise, and its subsequent breach, however disappointing and harmful, and though ever so reprehensible in morals, is not of itself enough to cause a court of chancery to declare a trust.''

And as to the character of evidence necessary to prove the essentials of such a trust the testimony must be clear and convincing. Moore v. Crump, 84 Miss. 612, 37 So. 109.

The bill having stated a case of constructive trust, were the complainants competent witnesses to prove the allegations thereof?

To establish the trust, it was necessary to recognize that the deed vested title in the grantee. That means title was out of the estate. Both complainants and respondent necessarily proceed upon the thory the title was thus vested in Mrs. Kierbow; that the deed lifted the title out of the grantor and her estate; that neither the grantor nor her estate had any further interest therein, the only question being whether the grantee held the title for herself alone or for herself and the complainants. That narrows the contest to the rights of complainants against defendant. The estate is not involved. Complainants are asserting no claim against the estate of Mrs. Herren. That is just the opposite of the effort to set the deed aside, reinvest title in the estate, and then claim it through the estate, the first theory underlying the bill. The statute, disqualifying one as a witness, applies only to a claim or defense of a litigant ''against the estate of a deceased person''. Therefore we are of the opinion that the three said witnesses are not disqualified by said statute to testify, if they can, to relevant, material and competent facts, within the scope of the allegations of the bill, tending to establish a constructive trust, and that it was error for the lower court to deny them that right. Love v. Stone, 56 Miss. 449;

Horne v. Nugent, 74 Miss. 102, 20 So. 159; Garner v. Townes, 134 Miss. 791, 100 So. 20; Ford v. Byrd, 183 Miss. 846, 184 So. 443; Shepherd v. Johnston, 201 Miss. 99, 28 So. (2d) 661.

The action of the lower court in dismissing the bill so far as it undertakes to set aside the deed from Mrs. Herren to Mrs. Kierbow is affirmed; but the cause is reversed and remanded for retrial on the trust issue because of the error in refusing to permit three of the complainants to testify on that issue.

Affirmed in part; reversed in part and remanded.