JOHN R. EMERY, FREDERIC W. STEVENS, EUGENE STEVENSON,
LINDLEY M. GARRISON, EDMUND B. LEAMING, JAMES E.
HOWELL AND EDWIN R. WALKER, VICE-CHANCELLORS.

---

AARON VAN HOUTEN et al.

*v.*

MARY V. H. STEVENSON et al.

[Decided November 1st, 1907.]

In a suit brought by two *cestuis que trust* or beneficiaries under a
will, each separately entitled to the whole or part of the income of the
one-sixth part of the testatrix's residuary estate which was devised and

1

bequeathed in six equal parts, the one-sixth part thereof to each of three of the defendants (one a married woman) absolutely, who were executors and trustees under said will, the issues of fact on the hearing were—*first,* whether a certain bond (which, with the mortgage securing the payment thereof, constituted part of said residuary estate) was under the circumstances under which the bond was given, a bond given by the said married woman executrix as original debtor, solely or jointly with her husband, to the testatrix or was given by her as security for her husband; *secondly,* whether the mortgaged premises were a sufficient security for the debt, and whether the trustees had been guilty of neglect in not foreclosing; and *thirdly,* whether the decrees of the prerogative court, made on the final account of the executors, and the intermediate account of the trustees, were adjudications to the effect that these securities were worth the appraised value contained in the official inventory, and that the undivided interest therein belonging to the trustees was then properly held by the trustees in the due performance of their duty and in the exercise of their sound discretion, answers having been filed by certain of the defendant executors and trustees setting up said decrees as bars to the present suit, so far as it attempted to show that the mortgage was not a sufficient security—*Held,* (1) that such decrees were not final adjudications that the bond and mortgage in question were, as against the complainants, worth the appraised value thereof, or that they were at the time of the passing of the accounts properly held by the trustees in the due performance of their duties; (2) that so far as the complainants seek a decree to compel the executors to foreclose, relief must be denied; (3) and that so far as the bill seeks a present decree against the married woman executrix and trustee defendant in relation to her liability on the bond by reason of the circumstances of the original loan, relief must be denied, because the question of her liability in such bond is prematurely raised; and that so far as the bill seeks equitable relief by charging the devises or bequests received by her with the amount of the bond, because of assurances to the testatrix that said defendant's share would be so liable, and that the testatrix relying on these assurances refrained from changing her will, the prayer must be denied, because of failure to prove any such representations or assurances by that defendant.

---

Heard on bill, amended bill, answers, replications and proofs.

The complainants are two *cestuis que trust* or beneficiaries under the will of Catherine Van Houten, being each now separately entitled to the whole or part of the income of the one-sixth part of residuary estate of the testatrix, which was devised and bequeathed in six equal parts. To each of the three of the defendants, Aaron Van Houten, Mrs. Milly Stevenson, wife of Preston Stevenson, and Rachel Van Houten, the one-sixth of the residue was given absolutely and in fee-simple. These three

residuary devisees and legatees were also executors of the will, and were empowered to sell and improve the real estate. The remaining one-half of the residue was not expressly devised or bequeathed to the executors, as trustees, but the income only on the three other sixths of the residue is to go to the respective beneficiaries of those shares, for a period fixed by the will, and as to the income on one of these shares (the share of John) it is directed that one-half remain in the hands of the executors, to be paid out by them. One-half also of the income of the share invested for George is to be paid to two of the executors, Mrs. Stevenson and Miss Van Houten, as special guardians and trustees of the defendant Catherine Post Van Houten, the daughter of George. These provisions, so far at least as the personal estate of deceased is concerned, constituted the executors, trustees of the remaining one-half of the residue, and it is not disputed that they are such trustees. The testatrix's estate consisted mainly of real estate, improved and unimproved, in the city of Paterson, the personal estate, according to the inventory, amounting to the sum of $20,270.97. In this inventory, which was signed by all of the executors, was included the following item:

|  | Nominal Value. | Actual Value. |
|---|---|---|
| Bond and mortgage of Preston Stevenson and wife on premises in Franklin township, Bergen county, N. J., and in Easthampton, L. I. | $10,000 | $10,000 |

The bond thus referred to was a joint and several bond given by Preston Stevenson and Mary Stevenson to Catherine Van Houten, dated January 26th, 1894, for $10,000, payable on demand with interest from date, and was originally secured by two mortgages, bearing the same date, given by Preston Stevenson and his wife Mary, on lands the title to which stood in the name of Preston Stevenson, one of the mortgages being on three tracts of land in Bergen county, and the other on one tract in Easthampton, Long Island. On October 24th, 1894, the mortgage on the New Jersey lands was canceled, and on December 26th, 1894, another mortgage on these lands was executed by Stevenson and wife to Mrs. Van Houten, as security for the bond in question. This latter mortgage contained an express

covenant, on the part of both Stevenson and his wife, for the payment of the bond. No express covenant for the payment of the bond was contained in the first New Jersey mortgage, and the Long Island mortgage, reciting that Stevenson and wife were justly indebted in the sum secured by the bond, contained an express covenant by Preston Stevenson to pay this sum. It was proved on this hearing that interest on the entire bond had been paid to June 22d, 1897, but whether paid to November 1st, 1897, before the signing of the inventory (April 1st, 1898), does not clearly appear.

The testatrix died about June 22d, 1897, and the will was proved in the prerogative court on September 28th, 1897, by all of the executors. On March 14th, 1898, and before the filing of any inventory, Mr. Harding, the complainants' solicitor, on behalf of George, Abram and John Van Houten (beneficiaries respectively entitled to income on three residuary shares), sent letters to each of the three executors, stating in substance that the settlement of the estate had been unduly delayed; that in their opinion the executors had been derelict in their duty, in their failure to collect the moneys due to the estate from Preston Stevenson, and that this neglect affected their interest in the estate, and that the object of the letter was to urge the executors toward a settlement of the estate at once, and also to notify her, as one of the executors, that should any neglect in not collecting these debts due to the estate, cause loss to the same, his clients would hold her personally responsible. To this letter Mrs. Stevenson and Miss Van Houten, on March 24th, 1898, each separately replied, in substance, that there had been no undue delay, that the executors understood their duty and would discharge it, and did not desire to avoid responsibility for their acts. Whether a similar letter was sent to Aaron Van Houten, the other executor, does not clearly appear. The inventory was filed very shortly after this letter (on April 8th, 1898), and besides this liability of Preston Stevenson on the bond, showed also that he was indebted to the estate on two promissory notes, amounting to $1,148.91, which were appraised at their face value. On October 25th, 1898, the executors filed their final account in the prerogative court, charging themselves with the total amount of the

inventory, $20,270.97, and also with certain increases on the inventory, including "interest on the bond in question to November 1st, 1897, and interest on the Preston Stevenson notes to April 1st, 1898," the total charges being $21,529.95. Allowances were claimed for $6,592.40, as paid out for debts, funeral expenses, &c. In this account also they prayed allowance for distribution made on April 1st, 1898, on account of each sixth share of the sum of $408.05 (being $2,448.30 in all), as to which one share was distributed to each of the executors individually as legatees, and the same amount distributed to themselves as trustees in severalty, under the will of decedent, as principal fund for the benefit, respectively, of Abraham, George and John Van Houten. After deducting these items, the balance remaining in the hands of the executors, or with which they would be chargeable, would be $13,713.49, as appears by their account. As to this amount the executors' account contains the following further claim of credit and statement:

"1898, June 1. Balance of cash ($2,663.49) and unliquidated securities transferred, undivided and undistributed, to these accountants individually as legatees (one-half) and as trustees (one-half), under the will of decedent, but subject to the final decree upon this accounting, and to all lawful charges for costs, expenses and commissions that may be adjudged thereon, $13,713.49."

The following are the securities transferred as above stated, and thereafter held undistributed by these accountants, one-half interest thereon in their own right in equal shares in common, and one-half interest thereon as trustees, with the several valuations thereof as appraised in the inventory filed herein, the same being their actual value at the time of such transfer:

"1. Bond and mortgage of Preston Stevenson.............. $10,000
"2. Bond and mortgage of Cornelius Breen................    550
"3. Bond and mortgage of Mary A. Green................     300
"4. Balance unpaid on bond of Sarah Jackson..............    200.

"$11,050"

On this date, October 25th, 1898, the defendants, as trustees, also filed in the prerogative court an account called "Trustees' Intermediate Account," in which account they charged themselves, as trustees, with the funds which had come to their hands

as real estate, and with reference to which they made the following declaration:

"These accountants further submit that the surplus personal estate of the deceased, which has come to their hands as a part of a trust estate, and which remains in the form of unliquidated securities, owned in common with the individual legatees under said will, consists of bonds and mortgages upon real estate, and is described in the schedule hereto annexed, marked Schedule A."

Schedule A contained a list of

"Securities transferred to these accountants from their account as executors, and now held by them as trustees, in common with their individual interests therein.

| | |
|---|---:|
| "1. Bond and mortgage of Preston Stevenson | $10,000 |
| "2. Bond and mortgage of Cornelius Breen | 550 |
| "3. Bond and mortgage of Mary A. Green | 300 |
| "4. Balance unpaid on bond and mortgage of Sarah Jackson | 200 |
| | "$11,050 |

"of which one-half belongs to individual owner's share of trust estate in bonds and mortgages held by these accountants."

In this account they also charged themselves, under date of April 1st, 1898, with the amount of $1,224.16 as the trust estate share of surplus personalty distributed among parties in interest, as shown under this date in the executors' account. And also under date of June 1st, as transferred to these accountants as trustees, from their account as executors, the trust estate share in the cash surplus of the personalty remaining undivided and undistributed in these accountants' hands, as shown by their executors' account under this date, subject to final decree upon said account, as therein stated, the total trust share being $1,331.75. Final decree was made upon both accounts on the same date, April 16th, 1889. On the executors' account the final decree directed, among other things, that they should be charged with the amount transferred to themselves as residuary trustees one-half, and legatees in fee one-half, undivided and undistributed cash, $2,663.49, and securities as certified, $11,050, subject to the expenses and allowances of this accounting, total $13,713.49; and it was decreed that the account aforesaid be finally settled and allowed, and the accountants after making

the deductions and payments hereinafter directed, were directed in due course "to distribute among themselves as residuary legatees in fee the equal shares in severalty, the undivided one-half part of the balance remaining of said sum of $13,713.49, with all income accrued on said one-half part of said sum to the date of such distribution, and to continue to hold the other half part as trustees under the will of said deceased, for the purpose of the several trusts therein expressed, together with all other sums already distributed and transferred to themselves as such trustees, as set forth in the account aforesaid. A commission was allowed, $305.30, besides counsel fee. In the decree made on the same day, on the intermediate trustees' account, it was directed that the accounts be passed and that the trustees be charged, among other things, with the balance of cash, $1,333.75, and securities, $5,525, transferred to said accountants from their account as such executors, being the shares of said trust estate in the undistributed surplus of personalty remaining in the hands of these accountants, as shown by their said account, but subject to the deductions and allowances for their commissions, costs and expenses on their accounting as executors, total $6,856.75. It was further expressly ordered and adjudged by the decree that the intermediate account of the parties as so audited and stated, be allowed, and the accountants are hereby directed, after deducting the allowances and payments hereinafter directed, being the commissions and counsel fees, to continue to hold said balance of funds remaining in their hands, with all income and increase thereon, for the purpose of the several trusts under the will of said decedent. Previous to the allowance of these accounts, and on the 18th day of March, 1899, the bill in this cause had been filed by the complainants, Abram, George and John Van Houten, against the defendants, executors and trustees, and also against Mary Stevenson, individually, and Preston Stevenson, praying a declaration or adjudication that Mary Stevenson, by reason of the grounds set out in the bill, was personally responsible upon the bond in question. It also sets out that these mortgages, given to secure the bond, were not first mortgages on the property, and at the time of filing the bill were not worth more

than the amount of the liens prior to the mortgages given to the testatrix, and that if they were sold under foreclosure they would not bring more than these prior liens; but the complainants charge that if they had been foreclosed within a reasonable time after testatrix's death, something would have been realized from a sale thereof, and that if suit had been brought on the bond and judgment obtained within a reasonable time after the death of testatrix, the full amount of the judgment could have been satisfied by execution against the property of Preston Stevenson, but that at the present time this amount could not be realized. They therefore pray that Mary Stevenson may be declared to be held liable on the bond, and that the executors, by reason of their failure to take proper proceedings to collect the bond, may be held liable to make good the loss. They set up also that Mary Stevenson now denies her liability on the bond and judgment obtained within a reasonable time charging that the debt was a debt of Mary Stevenson, and that she received the benefit of the money advanced by the testatrix upon the bond. They also charge that the bond and mortgages were given upon an assurance of the defendant Mary Stevenson that her share in the estate would be liable, and they pray a decree that the share is so liable for the amount of the bond. Separate answers have been filed by Mary Stevenson and Rachel Van Houten, the executors and trustees, and by Preston Stevenson. The defendant Aaron Van Houten has filed no answer, nor has any decree *pro confesso* been taken against him. The answer of Mary Stevenson sets up substantially that the bond and mortgage in question were not given for her individual debt or obligation to the testatrix, but that she signed the same only as security for her husband. It denies, however, that up to the present time she has ever claimed that she was not liable for the payment of the bond. She further insists that the bond and mortgage considered as a bond of Preston Stevenson alone, when secured by the mortgages upon his property, is a sufficient security and that no loss will result to the estate from the proper control of the security, but that it will ultimately be realized. She also denies that she, as trustee or executor, has failed in her duty in relation to the collection of the bond. Rachel Van

Houten, the other executor and trustee, takes substantially the same ground, alleging that the bond is an obligation only of Preston Stevenson, and that Mary Stevenson signed the same as security. The defendant Preston Stevenson files an answer to substantially the same effect. On the hearing before me, the issues of fact were—*first,* whether the bond and mortgage, under the circumstances under which it was originally given, was a bond given by Mary Stevenson as original debtor, solely or jointly with her husband, to the testatrix, or whether the same was given by her as security for her husband; *second,* whether the mortgaged premises were a sufficient security for the debt, and whether the trustees had been guilty of neglect in not foreclosing, and *third,* whether the decrees of the prerogative court, made on the final account of the executors, and the "Intermediate Account of the Trustees" were adjudications to the effect that these securities were worth the appraised value contained in the official inventory, and that the undivided interest therein belonging to the trustees was then properly held by the trustees in the due performance of their duty and in the exercise of their sound discretion. In all of the answers these decrees were set up as bars to the present suit, so far as it attempted therein to show that the mortgages were not a sufficient security. The complainant George Van Houten died after filing the bill and before the cause was brought to hearing, and it was understood that an order of revivor of the suit in the name of the two remaining complainants should be signed as of the date of hearing, and the cause proceeded with by consent. All the other parties interested in the estate being parties as defendants.

*Mr. John W. Harding,* for the complainants.

*Mr. Osborne* and *Mr. Preston Stevenson,* for the defendants.

EMERY, V. C. (after statement).

The decrees made in the prerogative court on April 18th, 1899, passing the executors' final account and the trustees' first intermediate account, were not final adjudications, that the bond and

mortgage in question were, as against the complainants, worth the appraised value thereof, or that they were at the time of the passing of the accounts properly held by the trustees in the due performance of their duties. If the decrees are not such final adjudications, then they do not, even if regularly obtained, create, in favor of any of the defendants, as executors or trustees, a bar to an inquiry or adjudication in reference to the value of the securities, or the liability of any of the defendants, either as executors or trustees, or individually, for the amount thereof, when such inquiry properly rises for adjudication. I take the status of these decrees and their effect to be as follows: By the joint inventory, signed by all executors, including Mrs. Stevenson (the executrix who had joined in the bond to testatrix), the executors described the security in question and appraised its value as follows: "Bond and mortgage of Preston Stevenson and wife on premises in Franklin township, Bergen county, N. J., and in Easthampton, L. I., nominal value $10,000, actual value $10,000," and this amount is part of the total appraisement, $20,270.97. In the final account the executors, filing a joint account, charge themselves with the entire inventory, and pray no allowance or deduction on account of the debt secured by this mortgage. The Executors' and Administrators' statute (*Revision of 1874 § 8; Gen. Stat. p. 1426*) provides that

"the appointment of a debtor as executor or executrix shall not, unless otherwise expressed in the will, be construed to discharge such executor or executrix from the payment of the debt, but the said debt shall be considered assets in his or her hands, to be accounted for in the same manner as any other part of the personal estate."

The inventory charged all the executors *prima facie* with the appraised value of this debt as assets of the estate, and the continuance of this charge in the final account, without praying any allowance, made them all responsible (*prima facie* at least) for this amount as so much assets of the estate collected and in hand for distribution of the estate. In *Weyman* v. *Thompson, 52 N. J. Eq. (7 Dick.) 263 (Court of Errors and Appeals, 1894)*, the question of the effect of a decree on the joint final account of executors was specially considered and decided, and the rule de-

clared that the matters conclusively adjudicated by such decree are exclusively the receipt of assets and disbursements in behalf of the estate, and that the balance is in the hands of all or one of· them. It is not, however, an adjudication that each of the executors has the balance, or as to which one of them has it. *Chief-Justice Beasley p. 269; Justice Dixon p. 273.* The defendant Mrs. Stevenson, although a married woman, is bound to the complainants as executrix, by this charge of the debts as assets, and, as between herself and her co-executors, may be primarily liable, and the defendant trustees, by their own act, as evidenced by the decrees on the accounting, further accepted, or purported to accept, as trustees, and as part of the trust estate, and at the full value thereof, this security passed from themselves as executors.

The decree entered on passing the executors' final account, so far as it purported to be a decree of distribution, was not a matter properly included in the decree on the account. The jurisdiction of the prerogative court over accounts (of executors at least) is purely statutory, and, except by statute, the prerogative court has no authority to order distribution by executors under a will. Such distribution was purely a matter of chancery jurisdiction. *In re Eakin, 20 N. J. Eq. (5 C. E. Gr.) 481 (William-son, Ordinary, 1858.).* The constitutional and statutory jurisdiction of the prerogative court over executors extended only to the probate of wills, and the settlement of their accounts, and (prior to 1872 at least) did not include any power to order a distribution. *Lord Cornbuy's Instruction, Leam. & Spi. (Reprint) 639; Prerogative Court act of 1846; Gen. Stat. p. 1030.* By the Orphans Court act *(Revision of 1874; Gen. Stat. p. 2357 § 5)* the ordinary was vested with the powers of the surrogate and orphans court, in relation to the settlement of the accounts of executors and trustees, but this section would not, I think, include the power to order distribution by executors. *Ordinary* v. *Barcalow, 36 N. J. Law (7 Vr.) 15, 20 (Supreme Court, 1872, Chief-Justice Beasley).* The one hundred and forty-sixth section of the Orphans Court act *(Gen. Stat. p. 2389)* expressly gives to the orphans court power to order distribution of intestate's estates only, and although section 151 *(Gen. Stat. p. 2391)* also authorizes the orphans court, where an account of executors

has been allowed, to make a decree of distribution under a will, "upon the application of any party in interest," the constitutionality of this provision has been questioned and decision thereon reserved by the court of errors and appeals in *Adams* v. *Adams, 46 N. J. Eq. (1 Dick.) 298 (1889)*. And in this case it was held that, under this section 151, a decree for distribution could not be made merely upon a notice of settlement of accounts, but that actual notice of the application for such decree must be given to the parties interested. No such notice appears (by the record or otherwise) to have been given in this case, and even if it should be held that the powers in relation to the administration of estates of testators and the settlement of accounts of executors, given by the fifth section (which was merely an amendment of the law of 1869, *P. L. p. 1102*), included a grant of power to the ordinary to order distribution under a will by the one hundred and fifty-first section (which was an amendment of a subsequent law of 1872), there was, under the *Adams Case,* no authority to make a binding decree of distribution in the absence of actual notice of special application thereof. The directions in this decree passing their final accounts, that the executors as trustees under the will take over from themselves as executors, and by way of distribution of the estate, the security in question (or rather an undivided interest therein) as payment or discharge of the balance coming to them as such trustees on distribution, is therefore no decree or adjudication as against persons other than the trustees interested in the estate—*first,* that the security was then of the value at which it was turned over or distributed to the trustees, or *second,* that the trustees were (as against other persons interested) authorized to accept it as assets realized and properly held in trust. The only effect of this recital in the decree is the effect derived from the fact that the trustees procured it, and that it operates as an admission on their part, that they received this security from themselves as executors, in the settlement of the estate, as assets of the estate realized to the full amount, without any claim for diminution or depreciation, by reason of the executrix not being bound, or otherwise; and that as trustees they received the same as representing, in their judgment, the value thereof, as stated in the accounting.

Whether this action of the defendants as trustees, in accepting from themselves as executors this security as a full discharge of their duty in relation to the collection of the assets of the estate (so far as they included a claim against one of the executors, inventoried and accounted for as such), binds them, and each of them, for the full amount so charged against them as taken over, it is not necessary now to decide. In my judgment, the taking over of the security to themselves as trustees in this manner for the full value thereof, makes them all *prima facie* liable for the entire amount, and until a rebate or allowance from this charge of the full amount has been made on proceedings directly and properly involving that issue, all of the trustees must, so far as the complainants are concerned, be held chargeable with the value at which it was taken over. Such question cannot properly arise until such rebate or allowance is claimed on an accounting as trustees, and probably only after proceedings taken to realize upon the mortgage and bond. Any or either of the trustees, other than Mrs. Stevenson, may foreclose the mortgage and bring suit upon the bond against her in this court. *Petty* v. *Young, 43 N. J. Eq. (16 Stew.) 654, 658 (Court of Errors and Appeals, 1887)*, and if, in the judgment of either of them, this course is advisable, in the interest of the estate, it is their duty to institute such proceedings at the peril of being held liable for the amount of any loss on the special ground that they have failed to exercise proper judgment as trustees. Proceedings to realize the security can, in my judgment, be brought only by some person entitled to recover thereon and receive the money, and the proceedings should, I think, be first for the foreclosure of the mortgage, for the reason that the language of the act of March 23d, 1881 (*P. L. p. 184 § 1*), relating to mortgages, seems to cover all proceedings of any character to collect the debt. Proceedings cannot, in my judgment, be maintained merely for the purpose of declaring Mrs. Stevenson's liability on the bond in advance of, and independent of, any suit to recover against her on the bond or mortgages (one of which contains a covenant for payment on her part) by a person entitled to recover, such as the other executors would be, and no case is here made by the bill or proofs which entitles complainants to a decree that Mrs. Stevenson now pay the amount of the bond.

In the present aspect of the case, the decision of the question, whether due regard to the interests of the estate, and the parties interested therein, other than the executors, requires the taking of proceedings to realize the security by proceedings to foreclose, and subsequent suit on the bond by the other executors in this court, is a matter for the sound judgment and discretion of the other executors, and each of them, and of them alone. The court will not undertake to control or advise the action in this respect by a direction in this suit that they must now foreclose. Nor is such decree necessary for the protection of the complainants. As the accounts now stand, all of the defendants' trustees are, in my judgment, *prima facie* chargeable to the complainants for the full value of the bond and mortgages, as assets of the estate admitted to be of that value in their hands. When the trustees, or either of them, by their accounts, pray allowance for any portion of the assets represented by this debt, as not realized, or as assets for which they are not jointly responsible, the question may arise as to their right to any allowance. This question, when so presented, would, I think, directly involve the effect of the inventory and decree on account, as concluding Mrs. Stevenson and the other executors as to the collection of this security by them as assets, and if it be not so conclusive, then it would further involve the responsibility of the trustees, or either of them, for any loss resulting from the failure to collect the debt by judicial proceedings, including a suit against Mrs. Stevenson upon the bond.

So far, therefore, as the complainant seeks a decree to compel the executors to foreclose, relief must be denied, because the court will not undertake to control or direct the judgment of the executors in the foreclosure of the mortgage. Especially must this direction be denied, in view of the fact that the bill alleges that Aaron Van Houten, one of the executors, desires to foreclose, and this executor, called as complainant's witness, says that the reason no attempt had been made to foreclose or collect the mortgage was that his co-trustees refused to do anything in the matter. He does not seem to have been advised, or to have supposed that he could himself foreclose the mortgage without their concurrence, and his failure to bring such suit heretofore

is not a sufficient reason for the court to relieve him of his duty and responsibility as trustee in reference to the security by directing and deciding for him what he shall do as to foreclosing. Nor has there been any such demand on the executors to foreclose, or to pursue the remedy on the bond, as would authorize the court to take the administration of the estate out of the hands of all of the executors by reason of failure to perform their duties in this respect. The letter of March 14th, 1898, written by the solicitors of the complainants on their behalf, was a complaint of delay in settling the estate, including the collection of claims against Preston Stevenson, and did not specially mention the security now in question. This letter, written before any inventory was filed, was followed by the filing of the inventory on April 6th, 1898, and the appraising of the debt as a bond and mortgage of Stevenson and wife at the full value. No other application to the executors appears to have been made by complainants to realize this security, before filing the bill (March 18th, 1899), or before the hearing (October, 1903).

And so far, also, as the bill seeks a present decree against Mrs. Stevenson, in relation to her individual liability on the bond, by reason of the circumstances of the original loan, relief must be denied. Until the trustees properly pray allowance for the amount for which they have charged themselves for this security, or by some other proceeding to obtain a judgment or decree upon the bond, directly raising the question of the validity of the bond, brought by some person who is entitled, either in law or equity, to recover the amount of the bond, the question of Mrs. Stevenson's liability on the bond, by reason of the circumstances under which the original loan was made, is prematurely raised. The denial of this relief at this time is, therefore, without prejudice.

So far as the bill seeks equitable relief, by charging the devises or bequests received by Mrs. Stevenson under the will with the amount of the bond, because of assurances to the testatrix that her share would be so liable, and that the testatrix, relying on these assurances, refrained from changing her will, the prayer must be denied, because of failure to prove any such representations or assurances by Mrs. Stevenson. Relief of this kind is based on

the personal fraud of the devisee, or of the person through whom he receives the estate, and, in the absence of such fraud, the statute of wills protects the devisee. I have lately considered this question, with an examination of the authorities, in *Powell v. Yearance, 73 N. J. Eq. (3 Buch.) 117 (1907)*. The complainant, however, as a beneficiary entitled to a portion of the income on the fund held in trust, would seem to be entitled to receive interest on this security from the trustees, unless they discharge themselves from such liability by the proof of facts relieving them. As the evidence now stands, at the time the cause was brought to hearing, no interest had been paid since December, 1897. The bill was filed March 18th, 1899, and charges that interest was due and payable from July 27th, 1897, and, under the prayer for general relief, the complainants may be entitled to a decree for interest. As, however, such liability of the defendants, or either of them, for interest alone, as distinct from principal, was a matter not argued by counsel, I will hear counsel on this point, and also on the question of the order of liability for interest, as between the defendant executors.