VIRGINIA HEINISCH

*v.*

WILLIAM PENNINGTON et al., executors of Jacob S. Rogers et al.

[Decided December 6th, 1907.]

1. Under *P. L. 1900 p. 363 § 4*, providing that a party to a civil action cannot testify as to any transaction with or statement by any decedent or intestate represented in such action, unless the representative offers himself as a witness in his behalf and testifies as to any transaction with or statement by decedent, a complainant in an action against the executors of her deceased half-brother on a claim against the half-brother in relation to the will of their father could not testify as to statements made by the two decedents in a conversation between them.

2. In an action against the executors of complainant's half-brother on a claim against him in relation to the will of their father, evidence as to a conversation between complainant and the half-brother shortly before the father's death examined, and *held* insufficient to prove that it was understood by either of them that the father had determined to alter his will so as to give complainant any definite sum additional to the provision already made for her.

3. Where, at the time of a suit against the executors of complainant's half-brother to charge his estate with his fraud in failing to execute a parol trust for complainant's benefit imposed upon decedent by their father, which trust the half-brother is alleged to have promised to fulfill, all the witnesses as to the physical and mental condition of the father, with the exception of complainant and another, were dead, and where though for nearly forty years after the father's death complainant's deceased brother had acted as trustee of the father's will and had given complainant only what she was entitled to under the will, and complainant made no claim under the alleged trust until after her brother's death, a court of equity will act with the utmost caution and will not charge the trustee's estate unless the promise and the intended fraud are established by clear proof.

4. The sole equitable basis of depriving a legatee or devisee of the full protection of the statute of wills is that by reason of a promise to the testator, made by the legatee or the person through whom the legacy was given, the testator was induced to make or leave unaltered the legacy or devise.

5. Where, by reason of a promise to a testator by a legatee, the testator leaves his will unaltered, the equitable remedy for compelling the legatee to carry out his promise is that of impressing the property received by the legatee with a trust *ex maleficio* and seizing the property for that purpose and not by a personal decree for performance and relief.

6. Where a promise was given on the faith of which an estate was devised to persons as tenants in common, the promisor being one, the other legatees did not hold their shares subject to the performance of promise.

7. Though a trust *ex maleficio* was imposed upon property bequeathed to a legatee by the legatee's failure to fulfill a promise made to the testator by virtue of which the testator failed to alter his will, the trust would not be impressed against the estate of the legatee nearly forty years thereafter, where such legatee's estate was largely, and, perhaps, altogether accumulated after the testator's death.

8. A claim in equity against a legatee to charge him as trustee *ex maleficio*, of which claim complainant had knowledge before she became of age, which was not prosecuted within twenty years after becoming of age, was barred by limitations.

9. Unexplained delay in bringing suit on a claim against a legatee to charge him as trustee *ex maleficio*, until after the death of the alleged trustee and of the witnesses whose evidence might be important on the question of the existence of a trust, constituted such laches as would bar a suit to impress a trust upon the legatee's property.

10. A promise by a legatee to a testator to provide well for one of testator's children out of the promisor's property, and to make her at his own death one of his own devisees, was too indefinite to be the subject of a suit for specific performance.

11. A promise by a legatee to a testator to provide well for one of testator's children out of the promisor's own property, and to make her at his own death one of his own devisees, in consideration of which promise testator allowed his will to remain unchanged by which he gave the great bulk of his estate to the promisor and three others as tenants in common, was unreasonable and inequitable, as it was as much for the benefit of the other legatees as for the promisor's own benefit, from none of which other legatees any consideration was received, and hence was not subject to specific performance.

---

On bill, &c. Heard on bill, answer, replication and proofs.

*Mr. Wesley B. Stout* and *Mr. Aaron E. Johnston,* for the complainant.

*Mr. George Holmes* and *Mr. Richard V. Lindabury,* for the defendants.

Emery, V. C.

The bill in this case is filed by Mrs. Heinisch, a half-sister of Jacob S. Rogers, deceased, against the executors of his will, and the residuary legatee and devisee under his will, and the

bill is based on a claim against the testator, in relation to the will of Thomas Rogers, the father of complainant, and Jacob S. Rogers. Thomas Rogers died on April 19th, 1856, leaving a will, dated December 28th, 1855, with a codicil, dated April 5th, 1856, and leaving a large estate, of which about $916,000 was personalty. At the time of his death he was carrying on a manufacturing business, known then or subsequently as the Rogers Locomotive Works, in Paterson, and his four sons, of whom Jacob S. was one, were associated with him in the business. The complainant was then about eight years of age, and was the daughter and only child of a second wife. By his will, Thomas Rogers devised to three trustees (of whom his sons Jacob S. and Columbus B. were two) six hundred shares of Paterson and Hudson River railroad stock, of a par value of $30,000, the income of which, until complainant was of age, and up to the amount of $800 was to be expended for her support and maintenance, and the balance accumulated and invested, and from her arrival at twenty-one, complainant was to receive the entire income during life, and at her death the capital to go to her issue. By his original will, Thomas Rogers gave to his wife Elizabeth, complainant's mother, $300 per annum, and by the codicil, executed fourteen days before his death, he established in her favor a trust in six hundred shares of the same road, and to a natural son gave $30,000 and interest. No increase of complainant's bequest was made by the codicil. The residue of Thomas Rogers' estate was, by his will, divided equally among his four sons, and they each received about $190,000, Jacob's share being the same as that of the other sons. Complainant came of age in 1869, and Jacob S. Rogers continued to act as one of her trustees, under her father's will, until 1893, when another trustee was substituted.

The accounts of the trustees show that during complainant's minority there had been an accumulation of principal of over $29,000, and that since arriving at age she has received the entire net income, varying from $4,000 to $5,000. Jacob S. Rogers, together with his brothers, continued the locomotive works after his father's death, survived all his brothers, and died in July, 1901, possessed of an estate of over $5,000,000.

By his will, dated June 23d, 1892, and four codicils thereto, dated respectively December 11th, 1894, December 5th, 1898, May 24th, 1899, and October 2d, 1900, after bequests to certain of his nephews and nieces, amounting to about $250,000, and other legacies of $30,000, he devised and bequeathed the residue of his estate, subject to two annuities of $500 each to two of his grandsons, to the corporate defendant, as an endowment fund, of which the income only was to be used for purchases of objects of art and books.

A clause in Jacob S. Rogers' original will (item fifteenth) declared that it was his intention to exclude all of his next of kin, heirs or collateral relations, except those mentioned in his will, from any share in his estate. Complainant was not mentioned in Jacob S. Rogers' will. A contest arose over the probate of this will before the prerogative court, in which the next of kin, or some of them, including complainant, were caveators. During the course of these proceedings, a claim was made by or on behalf of the next of kin, that there had been an agreement between Jacob S. Rogers and his deceased brothers, whereby these brothers, in default of issue, were to make mutual wills and were to leave their property to others of their issue. Jacob died unmarried and without issue. This claim and the objections to the probate were settled by an agreement between the heirs and next of kin and the residuary legatee, under which $250,000 was paid to the heirs and next of kin for distribution among them, and the heirs, including complainant, also released all claim against the estate under this alleged agreement. Complainant signed a release, under seal, to the residuary legatee from any claim arising out of this alleged contract for mutual wills, or the probate of the will, but with the following proviso: "Nothing herein contained, however, is intended to or shall operate as a release of * * * any claim I may have against the executors of the said estate arising otherwise than as aforesaid."

The will of Jacob S. Rogers was thereupon admitted to probate, and the executors advertised regularly for claims against the estate. No claim was presented by complainant, and the estate was settled by the executor's final account, and the residue

was paid to the corporate defendant, without, so far as appears, any notice of any other claim against Jacob Rogers or his estate, on the part of the complainant. The release is not claimed to be a bar to the present demand of complainant, but by reason of the nature of the claim released, the release may, by way of evidence, bear upon the existence at that time or previously of any claim of the character now set up.

The claim set out in the bill is substantially as follows: It is alleged that Thomas Rogers, complainant's father, on the day before his death, Jacob being present, desired to change his will and to give complainant $100,000 more than he had already given her, and was greatly worried; that Jacob then told his father not to let that worry him, adding: "I will provide for her. I will leave her well provided for." It is alleged in the bill that, by this language, Jacob meant that he would take care of complainant during her life, and at his (Jacob's) death would leave her a large part of his (Jacob's) estate; and that by falsely representing this to Thomas Rogers, Jacob induced Thomas to give to him (Jacob) a large sum of money, to wit, $100,000, which Thomas intended to give to complainant. Two witnesses were called to prove these alleged representations of Jacob S. Rogers to his father, one of them being complainant herself, a child eight years of age at the time. Her statement of the conversation between Jacob and his father was taken under objection and, under the statute, is inadmissible in this suit against the executors of Jacob's estate. *Evidence act 1900* § *4 (P. L. 1900 p. 363)* ; *Adoue* v. *Spencer, 62 N. J. Eq. (17 Dick.) 782, 794 (Court of Errors and Appeals, 1900)*. The other witness is an uncle of complainant, Emanuel Smelleger, now eighty years of age, a man then between twenty-eight and twenty-nine. At that time Smelleger was a journeyman carpenter, following his trade in New York, but was then out of work and (as he says) usually made his home at the house in New York where Mr. Rogers was living at that time with is wife, and where he died. This witness, who knew the son Jacob by sight, but had no particular acquaintance with him, says, that when Jacob came in on the day before his father died, the father spoke to him and said: "I have just offered

Dr. Gunn (one of the physicians who attended him) $100,000 if he would prolong my life thirty days." The witness (not Jacob) asked, "What did you do that for?" and Thomas Rogers said: "I want to make a change in my writings for this dear girl; she was neglected and I want to give her more than what she has got in writing." Jacob said, "Father, never mind that, I will provide well for her; don't let that worry you at all. I will provide for her." The witness further says that Rogers smiled and nodded his head and appeared to be perfectly well contented after his son had made this promise. The complainant was also one of the four persons present at this time, the others being Thomas Rogers, Jacob Rogers and the witness Smelleger. This witness, on cross-examination, says that Thomas Rogers, during his illness, offered large sums of money to different ones, Mrs. Rogers and himself, if they would cure him, and that he was very timid about dying. And as to any apprehension of approaching death at the time of this conversation, the witness says that during the last two weeks of his life he thinks, from the way he would talk, Thomas Rogers was not aware that he was likely to die, and further says, that when Thomas made this remark to Jacob, he (the witness) does not think Thomas had any idea that he was going to die. Smelleger swears that he supposes that Thomas Rogers offered this amount of money to prolong his life for thirty days, in order that he might change his will. And on reading over the entire evidence of this witness, I think that a conclusion that any facts sworn to by him prove that it was then understood, either by Thomas or his son Jacob, that Thomas had finally determined to give to this child, by an alteration of his will, $100,000, or any other definite sum, more than he had given, and to give it to her absolutely, would rest solely on a like supposition or conjecture, and not on evidence. Vague expressions of the kind made by the testator, and of the kind Jacob is said to have made in reply, "I will provide for her well," should not be considered sufficient to deprive a legatee of the benefit of the statute of wills. In all cases of this kind, courts of equity act with the utmost caution, and do not interfere, unless the promise and the intended fraud on the beneficiary are es-

tablished by clear and satisfactory proof. *Williams* v. *Vreeland, 32 N. J. Eq. (5 Stew.) 784, 787 (Court of Errors and Appeals, 1880).* And in this case the strongest and clearest evidence of Jacob's fraud in procuring the retention of provisions of a will in his favor, by inducing the testator to rely on his verbal promise, should be requred, for all the other witnesses to the physical and mental condition of the testator (which had important bearings on anything then said by the testator) are now deceased, and the claim is not made until after the death of Jacob himself, who seems for nearly forty years afterwards to have given to complainant only what she was entitled to under the will.

The sole equitable basis of depriving a legatee or devisee of the full protection of the statute of wills is, that by reason of a promise to the testator made by the legatee or the person through whom the legacy was given, the testator was induced to make, or leave unaltered, the legacy or devise, and the equitable remedy for the purpose of preventing the statute of wills from becoming a means of fraud, is that of impressing the property received by the legatee under the will, with a trust arising *ex maleficio,* and converting the legatee, as a holder of property bequeathed, into a trustee. *Williams* v. *Vreeland, 32 N. J. Eq. (5 Stew.) 784, 736,* and cases cited; *Yearance* v. *Powell, 55 N. J. Eq. (10 Dick.) 577, 579 (Court of Errors and Appeals, 1897)* ; *Fry Spec. Perf. (4th ed.)* § *577; Pom. Spec. Perf. (2d ed.) 268,* note. This equitable remedy is not by way of specific performance of a contract, and a personal decree for performance and relief, based on such grounds, would seem to clearly disregard the express provisions of the statutes, both of frauds and wills. I have not been referred to, nor do I find, any case where relief was granted against the legatee in such cases, except by seizing, either in his hands or of those who held for him, the property devised or bequeathed to him for the purpose of impressing it with a trust.

The other legatees of Thomas Rogers' residuary estate apparently knew nothing of any promise on Jacob's part, and not holding as joint tenants, but as tenants in common, and therefore not receiving their legacies through their brother, they

were entitled to hold their legacies as bequeathed by the will, without any impairment by reason of Jacob's alleged promise. I considered and decided this question in *Powell* v. *Yearance* (*October, 1907*), *67 Atl. Rep.* *892*. The estate of Thomas Rogers has been settled by his executors, and the residuary estate was divided among the legatees forty years ago. The estate on which a trust is now sought to be impressed, or a claim established, is the estate, not of Thomas, but of Jacob, accumulated largely (perhaps altogether) after he received his share of his father's estate. That any of the estate possessed by Jacob at his death was the proceeds of the estate received from his father is mere conjecture. So far, therefore, as the claim of complainant is based on any theory of trust, and of impressing property received by Jacob from Thomas with a trust *ex maleficio* in favor of complainant, it must fail, because there is no such property. And should it be considered that Jacob's subsequent conversion to his own use of the property received by him from his father (which may have been before the complainant came of age) left him still personally liable as trustee *ex maleficio,* and to the same extent as if he still held the property bequeathed, then the failure of complainant to prosecute her claim, if any she had, within twenty years after coming of age, brought the case within the application of the statute of limitations. This statute is applied by a court of equity in cases of trusts where the trust is raised constructively or by implication, through the application of its own equitable rules, and bars the claim, unless the cause of action has been concealed by fraud of the alleged trustee, and the party injured had no means of discovering the claim. *Barnes* v. *Taylor, 27 N. J. Eq.* (*12 C. E. Gr.*) *259, 265* (*Chancellor Runyon, 1876*) ; *Mills* v. *Hendershot, 70 N. J. Eq.* (*4 Robb.*) *258,* and cases cited (*Vice-Chancellor Emery, 1905*) ; *Wood Lim.* § *58* and note. And independent of this statute, the unexplained laches of the complainant in delaying suit until after the death of the alleged trustee, and of the witnesses whose evidence might be important upon the question of the existence of any trust would be a bar to impressing a trust upon property of which Jacob S. Rogers died seized, either as part of the property originally

received from his father, under circumstances which impressed a trust thereon in favor of the complainant, or as derived, directly or indirectly, from the proceeds of such property.

Looking at complainant's claim in another aspect given to it by the bill and at the hearing, viz., as based on personal contract made by Jacob S. Rogers, with his father, to provide well for complainant out of Jacob's own property and make her at his own decease one of his own devisees, no relief can be given. Such claim is an application for specific performance of a contract, and manifestly the contract, if it was made in this form, lacks elements necessary for this purely equitable relief. Not only is it too vague and indefinite to admit of specific performance, but it would be also unreasonable and inequitable, if not illegal, to control the right of Jacob to the absolute control of his subsequent acquisitions, by a decree for the specific performance of an agreement made with and for the benefit of other persons, from whom no adequate consideration was received.

In any aspect of the case, therefore, the complainant has failed to make out a claim entitling her to the aid of the court. Her expectation of provision from her brother's estate was perhaps a reasonable one, but it was evidently a mere expectation or hope, and was not based on any trust imposed on Jacob's property, or contract made by him for complainant's benefit, which this court can enforce in disregard of the provisions made by his will, and the effect given to them by the statute. The executors of his estate, and his residuary legatee, were therefore entitled to receive and dispose of the estate under these provisions, and the bill will be dismissed.