11187

STUCKEY *ET AL.* v. TRUETT *ET AL.*

(117 S. E., 192)

1. SPECIFIC PERFORMANCE—EVIDENCE HELD TO ESTABLISH ORAL AGREEMENT TO WILL PROPERTY.—Evidence *held* to establish an oral agreement by wife to will her property to her husband in consideration of his willing this property to her nephews.

2. SPECIFIC PERFORMANCE—COMPLETE PERFORMANCE ON PART OF DECEDENT HELD TO TAKE ORAL AGREEMENT TO DEVISE PROPERTY OUT OF STATUTE OF FRAUDS.—Where a wife orally agreed to devise and bequeath property to her husband, and the husband orally agreed with wife to devise and bequeath this property to her nephews, and wife died leaving a will in accordance with her agreement, the agreement was taken out of the Statute of Frauds by complete performance.

3. SPECIFIC PERFORMANCE—INTENDED THIRD-PARTY BENEFICIARIES ENTITLED TO SUE ON AGREEMENT TO DEVISE PROPERTY.—Where a contract to devise property was made for the benefit of plaintiffs, they are the proper parties to institute proceedings for its enforcement.

Before PEURIFOY, J., Darlington, November, 1921. Affirmed.

Action by Dwight C. Stuckey *et al.* against Angie Truett *et al.* From a decree for plaintiffs the defendants appeal.

The decree of Circuit Judge James E. Peurifoy is as follows:

This is an action to enforce the specific performance of a contract to make a will. The complaint charges that Mrs. Eliza C. Truett and her husband, Jacob T. Truett, some time prior to 1913, entered into an agreement whereby they agreed that, if Mrs. Truett would devise and bequeath unto her husband, Jacob T. Truett, all of her property, real and per-

sonal, Jacob T. Truett would, on his part, devise and bequeath said property to the plaintiffs, Dwight C. Stuckey, Oscar C. Stuckey, and Percy P. Stuckey, who were the nephews of Mrs. Truett, and for whom she wished to provide; that pursuant to said agreement, during the year of 1913, Mrs. Truett made her will, devising and bequeathing all of her property, real and personal, unto the said Jacob T. Truett, and left the same of force at her death, which appears by the complaint to have occurred during the year 1913, but which is admitted to have occurred during the year 1917, and that the said Jacob T. Truett enjoyed the benefits of such devise and bequest until his death, which occurred during the year of 1918; that the said Jacob T. Truett neglected and failed to carry out his part of said agreement made with his wife, Eliza C. Truett, but, instead of carrying out said agreement, left his will devising and bequeathing such property unto the defendants, except the defendant Z. T. Folsom, who was appointed the executor of the said will; that both wills were duly admitted to probate in common from; that the executor of the will of Jacob T. Truett qualified and is preforming his duties; and the plaintiffs ask the Court of equity to enforce the specific performance of the agreement above alleged.

The defendants all answered, denying, generally, the allegations of the complaint, and set up the statute of frauds as a bar to the action. None of the pleadings were verified. All of the issues were referred to the acting master, who took the testimony, but on account of his indisposition, by consent of counsel, I heard the case on the testimony taken by the master.

It appears from the testimony and the admission of counsel that before her marriage Mrs. Eliza C. Truett was Eliza C. Parrott, and married late in life and left no children; that she was a most industrious, hard-working, businesslike woman, of positive character and vigorous intellect; the real estate in question came to her from her father's estate; that

she, with her husband, moved upon this piece of land immediately after their marriage; that her property was incumbered by some debts then, which were subsequently paid off. It further appears that Mrs. Truett and her husband were estranged from her husband's people; that there was no communication, social or otherwise, between them, and, although they lived in the same neighborhood, this relationship continued throughout the life of Mrs. Truett, and up until a very short time before the death of Jacob T. Truett; that some time before the marriage of Mr. and Mrs. Truett the mother of the plaintiffs, who was Mrs. Truett's sister, died, and that Mrs. Truett took charge of the plaintiffs, who were small children at that time, and mothered them and practically reared them, and that a very affectionate relationship grew up between Mr. and Mrs. Truett and the plaintiffs; that they stayed long periods of time with Mr. and Mrs. Truett, and assisted them in their farm work, and were treated by both probably fully as well as if they had been their own children. It further appears that, after the plaintiffs became grown men and had families of their own, and up until the death of both Mr. and Mrs. Truett, this filial affection between them continued unabated, and in the years of their old age they were practically dependent upon these boys, who carefully and lovingly nursed them and cared for them, in a most devoted and commendable manner, up until the times of their deaths. It further appears that in the discussion of their family affairs there was uniform and harmonious agreement that after their deaths the Stuckey boys were to get their property.

During the years of 1907 and 1908, Mrs. Truett apparently undertook to make her will; she made three attempts to do so, but never completed the instrument. In each case she provided for a life estate in her real estate for Mr. Truett, but did not progress far enough with the writing to indicate where the remainder was to go. She finally completed her will, and Mr. and Mrs. Truett carried it, so

written by her, to his attorney at Darlington, S. C. What this will contained does not appear, but it does appear that another will was prepared by such attorney for her execution and delivered to Mr. Truett. She kept this will for some time before its execution, and it was finally executed at her residence during the year of 1913. This is the will that was left by her, and in it, she devised and bequeathed all of her property, real and personal, unto her husband. This will was executed during the year of 1913, and during the year of 1917, Mrs. Truett died. It appears that at the time of her death, Mr. Truett was unwell and suffering from Bright's disease, which, about 11 months later, caused his death. During the interim between Mrs. Truett's death and the death of Mr. Truett he spent a good deal of his time with his wife's niece, Mrs. Lizzie Folsom, and considerable time with the plaintiffs, where he was treated by their own physician. He discussed his affairs and particularly his agreement with his wife, with Mrs. Folsom quite frequently and during the last few months of his life, he, especially when he was suffering much, would ask that the Stuckey boys be sent for, so that he could fix up his papers, but never did so. About 10 weeks before he died, the plaintiffs placed him in the Florence Infirmary, we find the first revival of any in- or the other of them visiting him every few days, where he remained about 7 weeks. While he was under treatment at the Florence Infirmary, we find the first revival of any intercourse between him and his own relations. They began to visit him while he was at the hospital. About two weeks before he died and after his illness had progressed to such an extent that he was incapacitated mentally, from attending to any business at all, he was removed from the hospital under circumstances which can admit of no doubt that it was done by the agents of the defendants. The conduct of the defendants in thus removing Mr. Truett from the hospital does not commend itself to the Court. He was in the last stages of Bright's disease, and needed the utmost

care and best medical attention to prolong his life. His mind was so impaired as to render his judgment valueless. He might have imagined that he wanted to go home, but he was in no condition to know what he wanted to do, and certainly did not know what he ought to do. The defendants, under these circumstances, removed him, without the consent or knowledge of the plaintiffs, who had placed him there, nor of the attending physicians, nor of the physicians and authorities in charge of the hospital. They carried him to his home, made no adequate provision for is comfort, and did not carry out his request that the plaintiffs be sent for, although promising to do so. About one week after he was carried home, and about one week before his death he executed his will, whereby he divided his property among the defendants, his own relatives, with a small bequest to the Folsoms.

The defendants pleaded the statute of frauds and it was argued that the absence of a writing of any kind, as required by the statute, was a bar to this action. I do not think so. It was admitted at the hearing that the rule was general that part performance, even of contracts to make a will, took the case out of the statute; but it was argued that the case of *Brown v. Golightly,* 106 S. C., 531; 91 S. E., 869, Ann. Cas. 1918A, 1185, holds that there must be some writing in a case like this. I have carefully considered this case and I do not think the decision so holds. In that case the testimony of the plaintiff was held incompetent, and without it, and without any written evidence of the contract, it was held that there was an entire failure to establish the contract in that case. This view is made certain by the further language in the same decision: "In order to enforce a contract whereby a party contracts to dispose of real estate by will, the same principles apply and the same proof is necessary as when he contracts to convey title by deed." It woud not be contended that part performance of a contract to convey real estate by deed would not take the case out of the statute. I

do not, therefore, think that decision alters the general rule, and there being, in this case, satisfactory evidence of part performance, the defense of the statute of frauds is overruled.

My conclusion is that the agreement charged in the complaint was made and should be enforced. I recognize the rule that testimony in a case of this kind must be clear, definite, and convincing. It must more than preponderate. It must be clear and must convince. Stated in another way, it finally comes back to that. The rule does not require any number of witnesses. The testimony of one witness may be clear and carry convincing power, especially when so strongly corroborated by the circumstances as is the case here. The testimony of one witness with strong circumstantial corroboration, not only might be, but is, more convincing than the testimony of a number of witnesses, uncorroborated by the circumstances. In this case, no witnesses heard the contract made; but it is very clear that the whole contract was admitted by both Mr. and Mrs. Truett over and over again. The testimony of Mrs. Folsom, who was a niece of Mrs. Truett, and who was very close to both Mr. and Mrs. Truett, and to whom they confided their family affairs, leaves no doubt upon this point, and shows that, almost every time the matter of the disposition of their property came up, both of them admitted the existence of this agreement. After Mrs. Truett died, Mr. Truett, who spent a considerable part of his time in Mrs. Folsom's home, on numerous occassions admitted the existence of the agreement. Mrs. Folsom was a defendant in the case, and a beneficiary under Mr. Truett's will, and she was testifying against her own interest. Her testimony impressed the Court as particularly believable, nor was there any vagueness about it; so that here we have at least one witness whose testimony is clear, definite, and convincing.

Any testimony of communications between the plaintiffs and Mr. and Mrs. Truett is within the inhibition of Section

438 of the Code of Procedure, and therefore, as to communications concerning this contract, if any were made, their mouths were shut. However, all of the circumstances of the case corroborate the testimony of Mrs. Folsom and the other witnesses who testified to similar admissions, and bear out the contention that such an agreement was made between Mr. and Mrs. Truett. In the first place, a large part of the property involved came from the father of Mrs. Truett and the grandfather of the plaintiffs. It would be more than natural that she should desire that this property should remain in her family. In the next place, Mrs. Truett practically stood in the relationship of mother to the plaintiffs. Their affection for each other was pronounced, and it would be expected that she would want them particularly to have her property. Next the mother of the plaintiffs had not received any part of the property of her father and the father of Mrs. Truett, and this was stated by Mrs. Truett to be one reason that she wanted the plaintiffs to have the property.

Again, to make a will to her husband without such agreement would, in case of his dying intestate after her death, cast by descent the entire property upon his collateral relations, people with whom she was not on friendly terms, a thing which she could hardly want to happen. And again, Mrs. Truett was admittedly a woman of positive character, and was devoted to the plaintiffs, and it clearly appears that it was the intention of these old people that they were to get this property. Indeed, this fact was admitted by one of the defendants' counsel in this argument. It is therefore most likely that a woman of this type, with such intention, would make definite provision for the execution or performance of such intention. Again, the testimony of the other witnesses, introduced by the plaintiffs, while not entirely clear upon the main point, yet many of them testified to strong corroborative circumstances, statements, and admissions.

I am not impressed by the argument that the making of a different will by Mr. Truett indicates that there was no such agreement; for according to the testimony of Dr. F. H. McLeod under whose treatment he had been for seven weeks just previous to the making of his will, he was mentally incapacitated from attending to any business, and it was very apparent that he was under the dominating influence of his relations, the defendants in this case, and their agents, and, in his weakened physical and mental condition it was very easy for them to persuade him to violate his agreement, even if he then remembered it at all, which is doubtful.

It is very evident that Mrs. Truett wanted to take care of both Mr. Truett and the plaintiffs, and by making the agreement charged in the complaint, and carrying it out as she did, she provided for both. Besides, on behalf of the defendants, it is significant that there was no substantial evidence rebutting the plaintiffs' testimony, nor explaining any corroborating circumstances. If the agreement was made, and I am convinced that it was, performed on the part of Mrs. Truett. When she died, leaving of force her will, all that the agreement exacted of her was done. Therefore the contract was completely performed on her part, the exceptions to the statute of frauds have been met, and the agreement becomes binding and enforceable. The contract having been made for the benefit of the plaintiffs, they are the proper parties to institute proceedings for its enforcement.

It is therefore ordered, adjudged, and decreed that the plaintiffs are entitled to the property derived by the said Jacob T. Truett under the will of his wife, Eliza C. Trett, and that the defendants, Angie Truett, Featherette Olivia Truett, Bertram Truett, Sam Truett, and Rosa Parnell, within 30 days after notice to their attorneys of the filing of this decree, do execute and deliver unto the plaintiffs a good and sufficient fee-simple deed conveying the lands described in the complaint, and in default thereof that the

Judge of Probate for Darlington County, acting master, convey such lands unto the plaintiffs, on behalf of the defendants above 'named, conveying their interest therein, and that the defendants be required to account to the plaintiffs for all rents and profits derived from said real estate since the death of the said Jacob T. Truett.

It is further ordered, adjudged, and decreed that the defendants, including the defendant Z. T. Folsom, as executor, do deliver unto the plaintiffs all the personal property derived by the said Jacob T. Truett under the will of Eliza C. Truett, and that it be referred to the Judge of Probate for Darlington County, as acting master, to ascertain and report the personal property in the possession of the said defendants, or any of them, so derived, and the property received by them, or any of them, and any funds derived from the conversion of said personal property and the rents and profits to which the plaintiffs are entitled under this decree, less any taxes paid.

*Messrs. L. M. Lawson, J. S. McInnes* and *T. C. Cork,* for appellants, cite: *Sufficiency of proof of contract to devise:* 106 S. C., 532; 100 S. C., 349. *Contract cannot be enforced by third party:* 69 N. Y., 283; 2 A. L. R., 1193; 36 N. Y. Supp., 607; 68 N. Y. Supp., 719.

*Messrs. Tatum & Jennings* and *Jas. L. Coggeshall,* for respondent, cite: *Part performance takes the case out of the Statute of Frauds:* Rich. Eq., Cas., 5; 29 S. C., 72; 49 S. C., 62; 57 S. C., 559; 100 S. C., 341; 105 S. C., 496; 73 S. C., 160; 106 S. C., 519. *Where promise is made for benefit of third person, that third 'person may maintain action:* 1 Rich., 268; 3 Strob., 197; 83 S. C., 294; 89 S. C., 14.

April 12, 1923.

The opinion of the Court was delivered by MR. CHIEF JUSTICE GARY.

For the reasons therein stated the decree of ·his Honor the Circuit Judge is affirmed.

MESSRS. CHIEF JUSTICES COTHRAN and MARION concur.

·MESSRS. JUSTICES WATTS and FRASER dissent.

MR. JUSTICE COTHRAN: I concur in the opinion of the Chief Justice affirming the decree of the Circuit Judge upon the following grounds: .

The evidence, with all the surrounding circumstances, demonstrating the propriety, reasonableness and probability of the alleged agreement, satisfies me that the Circuit Judge was right in finding that the will was executed upon the promise of the devisee to devise the property to the boys who had been raised by Mrs. Truett and were the objects of her solicitude and affection. In 1 Tiffany, Real Property, § 94, it is said:

"If one procures a devise by promising the testator to give the beneficial interests in the whole or a part of the property to a third person, he will be regarded as holding in trust for such person"—citing *Dowd v. Tucker,* 41 Conn., 197. *Olliffe v. Wells,* 130 Mass., 221. *Gilpatrick v. Glidden,* 81 Me., 137; 16 Atl., 464; 2 L. R. A. 662; 10 Am. St. Rep., 245. *Ragsdale v. Ragsdale,* 68 Miss., 92; 8 South., 315; 11 L. R. A., 316; 24 Am. St. Rep., 256. *O'Hara v. Dudley,* 95 N. Y., 403; 47 Am. Rep., 53. *Hoge v. Hoge,* 1 Watts (Pa.), 163; 26 Am. Dec., 52.

To which may be added: *Whitehouse v. Bolster,* 95 M. E., 458; 50 Atl., 240. *Smillin v. Wharton,* 73 Nef., 667; 103 N. W., 288; 106 N. W., 577; 112 N. W., 622; 113 N. W., 267. *Fairchild v. Edson,* 154 N. Y., 199; 48 N. E., 541; 61 Am. St. Rep., 609. *People v. Schafer,* 266 Ill., 334; 107 N. E., 617. *Gemmel v. Fletcher,* 76 Kan., 577; 92 Pac. 713; 93 Pac; 339. *Taylor v. Fox* 162 Ky., 804; 173 S. W., 154. *Benbrook v. Yancy,* 96 Miss., 536; 51 South., 461. *Mead v. Robertson,* 131 Mo. App., 185; 110 S. W., 1095. *Heinisch*

*v. Pennington,* 73 N. J., Eq., 456; 68 Atl., 233. *Powell v. Yearance,* 73 N. J. Eq., 117; 67 Atl., 892. *Van Houten v. Stevenson,* 74 N. J. Eq., 1; 77 Atl., 612. *Tyler v. Stitt,* 132 Wis., 656; 112 N. W., 1091; 12 L. R. A. (N. S.), 1087; 122 Am. St. Rep., 1012. *Hollis v. Hollis,* 254 Pa., 90; 98, Atl., 789. *Barron v. Stuart,* 136 Ark., 481; 207 S. W., 22. *Brazil v. Silva,* 181 Cal., 490; 185 Pac. 174.

MR. JUSTICE FRASER: I cannot concur with the Chief Justice in affirming the Circuit decree. The undisputed facts are:

Mrs. Eliza C. Truett was married rather late in life to Jacob T. Truett. She had a tract of land upon which there was a mortgage. Very soon after the marriage she and her husband moved on the land and moved into a small tenant house. By hard work and thrifty habits they farmed the land, paid off the mortgage, and built a dwelling house and other houses necessary to a good farm. The plaintiffs in this case were nephews of Mrs. Truett, and lived with her for several years, when they were boys of tender years. The relationship was close and affectionate. Mrs. Truett frequently expressed her determination to give her property to her nephews, the plaintiffs after her death. There were several partially written wills, written by Mrs. Truett, in which she gave a life estate to her husband, Jacob T. Truett, but stopped there and left them incomplete as to the remainder. These partial wills were not signed. It is alleged that Mr. Truett took one of these wills to a lawyer, and brought back a will giving to Mr. Truett a fee in the land, with no provision for a remainder. This will Mrs. Truett kept for some time, but finally executed it. The plaintiffs claim that Mrs. Truett executed it under an agreement with Mr. Truett that he would give the land to her nephews. Mr. Truett, however, made a will giving the property to his own kin, in violation, the plaintiffs claim, of his parol agreement. This suit is brought to enforce that parol agreement.

This action is hard to classify under legal remedies. It cannot be a suit to enforce a contract for mutual wills, as no witness testifies that Mr. Truett agreed to give the property to the plaintiffs by will. The same is true as to a deed. There is no evidence of fraud. The testimony shows that Mrs. Truett knew that the will gave to her husband a fee, and made no provision for her nephews, when she signed it. There was no undue haste. Mrs. Truett kept the will unsigned for some time. It cannot be said that Mrs. Truett executed the will in reliance on the promise of her husband, because she said time and again that she was afraid that Mr. Truett would not give the property as he had agreed to do. There is no evidence of undue influence. Mrs. Truett was not weakminded. From the testimony of some of the plaintiffs' witnesses, it would appear that Mrs. Truett was the controlling spirit of their joint labors.

The simple question is: Will the Courts enforce a parol agreement to convey land, without any circumstances upon which to base an estoppel? To illustrate: A man has two nephews; the one is dutiful, the other undutiful. He loves the one and hates the other. He has said innumerable times that he intends to make his will giving all to the dutiful nephew and disinheriting the undutiful nephew, and yet he dies intestate. This case demands that the Court shall make a will for Mrs. Truett, and it has no power to do it. Mrs. Truett was under no legal or moral obligation to her nephews, the obligation of the nephews to Mrs. Truett was very great. Doubtless Mrs. Truett's love for the plaintiffs was very great, as men and women love those for whom they labor. That kind of love is a free gift. While Mr. Truett had no legal right (except the law of wills) to that property, he did not have a moral right to have in fee at least a part of the property upon which he had spent years of labor. Strike out Mrs. Truett's will, and the law would have given him half in fee. The plaintiffs claim it all.

This claim being based solely on parol, should not, I think, be allowed.

For these reasons I dissent.

MR. JUSTICE WATTS concurs herewith in dissent.